AUSTIN M. GREEN *v.* WILLIAM MERRIAM.

### *Statute of frauds.*

The plaintiff sold at auction, to the defendant, sixteen sheep for $80.00. The sheep were then in a yard of the plaintiff, and he and the defendant drove them into another yard of the plaintiff, and the defendant then told the plaintiff, if he would keep them until a certain day, he (the defendant) would then come and get them and pay all bills. This was assented to by the plaintiff, and the sheep were so kept, but at the expiration of the time the defendant declined to take them. *Held*, that the property was sufficiently accepted and received within the meaning of those terms as used in the Compiled Statutes, § 2 chap. 64, entitled "The prevention of frauds," &c.

BOOK ACCOUNT. The plaintiff's account was as follows.
"Feb. 23, 1854,

| | | | |
|---|---|---|---|
| " To one ox-yoke, | | $1 | 50 |
| "    16 sheep at $5 each, | | 80 | 00 |
| "    Keeping sheep 2 days by agreement, | | | 50 |
| "Feb. 25, 1855, By cash, | $1 | 50 | |

51

which the auditor allowed as charged, subject to the opinion of the court upon the following facts.

Sometime prior to the 23d of February, 1854, the plaintiff advertised that on that day he would sell at auction, at his residence in Sheffield, a large amount of personal property enumerated in his advertisement, and on that day he employed one James Roberts, as his auctioneer, to sell said property; and the plaintiff and said Roberts procured one Laban M. M. Gray, as a clerk, to keep an account and record of the sale.

The defendant bid off the ox-yoke and the sheep at the prices charged in the plaintiff's account, he being the highest bidder on each of the above named articles, and they were struck off to him by the auctioneer, and entered to him by the clerk, at the time, in a book in which he kept the sales, and this the defendant knew, and he made no objection to the same at the time. Awhile after the sheep were so struck off, the defendant inquired if the plaintiff had another yard where the sheep could be put away from the horned cattle, so as not to be injured by them; the plaintiff told him there was one, and they, with others, drove the sheep into another yard.

Near night, as the defendant was about starting for home, he told the plaintiff that the roads were so drifted, and the distance to his residence so great, that he should be unable to get the sheep home that night, and that if the plaintiff would keep the sheep until Saturday night he would come then, and get them, and pay all bills. The plaintiff replied that the sheep would have to stay with some colts, if they were left; to which the defendant said "I will risk the sheep if you will the colts."

The defendant came the next Saturday night and said that he was not obliged to take the sheep, that they were not what he supposed they were, and refused to take them, though requested to do so by the plaintiff; and he then took the ox-yoke and paid for it.

The plaintiff claimed that the changing the sheep into the other yard, as well as employing the plaintiff to keep them, amounted to such a delivery by the plaintiff and acceptance by the defendant as the statute contemplates, and the defendant claimed that it did not. The plaintiff further claimed that the memorandum made by the clerk of the auction was a compliance with the statute, and the defendant claimed that it was not.

The county court, December Term, 1856,—POLAND, J., pre-siding,—rendered judgment for the plaintiff to which the defend-ant excepted.

*J. P. Saetto* for the defendant.

The defendant cannot be made chargeable for the sheep. He is relieved by the statute to prevent frauds and perjuries. Comp. Stat. chap. 64.

The facts reported by the auditor do not show a delivery.

To have amounted to a delivery, they must have been intended by the vendor as vesting the right of possession in the vendee, and there must have been an actual acceptance by the vendee with an intention of taking the possession as owner. See Chit. on Cont. 390.

The acceptance must be proved by some clear and unequivocal act of the party to be charged. *Snow* v. *Warren*, 10 Met. 132.

The plaintiff had not relinquished his lien upon the property for the price, and while the plaintiff retains his lien there can be no acceptance by the defendant that will avoid the statute. Chitty on Cont. 394, 395.

This sale was not an auction sale recognized by the laws of this state. We have no sales recognized as auction sales in this state except sheriff's sales.

*E. A. Cahoon* for the plaintiff.

The plaintiff did everything required of him to give the defend-ant full possession and control of the property, and the defendant not only took control of the sheep, but said to the plaintiff that he would risk the sheep, &c. The time of payment or credit was extended to Saturday when the defendant promised to pay all bills.

The acceptance of property, as a general rule, implies a deliv-ery. *Redington & Co.* v. *Roberts*, 25 Vt. 686. In the case of *Chamberlain et als.* v. *Farr*, 23 Vt. 270, the court say in reference to a sale of straw, left in the vendor's barn, to be taken as the vendee desired, at an agreed price for the mass, that "in matters of such bulk, all that is necessary to constitute a delivery is that the contract of sale should be complete, the particular portion set apart by itself, nothing more remains to be done on the part of the

vendor, and the vendee agrees to take the goods as they are and where they are." And Story on Sales, § 276, says, that "if a final and unequivocal appropriaton of the property be implied from the acts of the parties, the statute is sufficiently complied with."

With reference to the statute of frauds, it would seem that a sufficient memorandum was made to perfect the contract, and make it binding, independent of delivery. This is so unless a distinction can be drawn between an ₍auction and a voluntary public sale, where the same forms are adopted, and for such a distinction I can find no good reason. See opinion of Lord MANSFIELD, *Emerson* v. *Heelis*, 2 Taunton 46.

The opinion of the court was delivered by

BENNETT, J. It is claimed by the defendant that there can be no recovery by the plaintiff, because of the statute for the prevention of frauds and perjuries, (Comp. Stat. chap. 64,) but as applied to the facts of this case, the objection cannot be sustained. The only controversy is in relation to the sheep. The ox-yoke had been specifically paid for. The sheep as well as the ox-yoke were sold at public auction, and the defendant bid them off at the prices charged in the plaintiff's account. The plaintiff employed Roberts as his auctioneer, and the plaintiff and the auctioneer employed one Gray, as a clerk, to keep an account and record of the sales. The articles bid off by the defendant were entered to him by the clerk, at the time, in a book in which he kept the sales, and they were not only struck off to the defendant with his knowledge, but also entered to him by the clerk, and to all this he made no objection. The sheep were by the parties put into a yard by themselves; and before the defendant left, for the reasons assigned in the report, he engaged the plaintiff to keep the sheep for him until the following Saturday. We apprehend there was such a delivery of the sheep as to take the case out of the statute. Not only the title passed to the vendee, but also the possession of the sheep. The vendor became the bailee of the vendee, and his possession, by means of the agreement, became the possession of the vendee, and the sheep were entirely at his risk, and were to be maintained at his expense. If the purchaser shall accept and receive part of the goods sold, in the language of the statute, the case is not

within it. See Comp. Stat. chap. 64, § 2. The same form of expression is used in the 17th section of the English statute of Charles II. of frauds and perjuries, except the word " actually" is inserted before receive, and the decisions under that section are of course applicable to us.

It may seem, perhaps, a little difficult to reconcile all the cases which have been decided under the English statute in regard to what shall constitute a delivery and what an acceptance, so as to take the case out of the 17th section of the statute. In *Elmore* v *Stone*, 1 Taunton 457, the plaintiff, who kept a livery stable and dealt in horses, proposed to the defendant to sell him a pair at a given price, but the defendant offered a less price, which was rerejected, but at length he sent word that the horses were his, and that the plaintiff must keep them at livery for him, and the plaintiff manifested his acceptance to this by removing the horses out of his stable into another stable, and it was held that the plaintiff from that time possessed them 'not as owner, but as the bailee of the vendee, and that after he had consented to keep them at livery for the defendant, he could not have retained them, although he had not been paid the price, and that consequeetly the case was not within the statute. In that case, according to the views taken by the court, the acts of the parties were such as clearly to place the horses within the power and under the exclusive dominion of the vendee. The case of *Howe* v. *Palmer*, 3 B. & A. 321, is decided upon the ground that there was no acceptance of the tares by the vendee. They were sold in market by sample, and though the vendee was to send to the vendor's farm for the tares, yet he, at the time, refused to receive the sample which was offered him, and requested that the tares might remain where they were until he wanted them, and this was acceded to by the vendor. In that case it was considered that no new relation was created between the vendor and vendee, and the fact that the tares were to remain on the plaintiff's farm till sent for, was a part of the contract. It is said that case differs from *Elmore* v. *Stone*, inasmuch as, in the latter case, the horses were transferred from the sale to the livery stable, and directed to be kept at the expense of the vendee, which certainly was evidence of acceptance by him. We think the case now before us is one where, from the

facts found by the auditor, the county court might well have inferred a reception and an acceptance of the sheep by the vendee, which may be regarded, perhaps, as a mixed question of fact and law. After the sale, the sheep were collected and put into a yard by themselves by the parties, and the vendor was told by the vendee if he would keep them till Saturday of the same week, he would come then and get them and pay all bills. This was, in effect, agreed to by the reply made, and the plaintiff has in his account charged for the keep of the sheep for the two days.

The county court might then have well inferred that the relation of the parties was changed from vendor and vendee, to that of bailor and bailee, and that consequently the vendee had, in effect, both accepted and received the property in the language of the exception in the statute. The plaintiff, by agreeing to keep the sheep upon hire, as the bailee of the vendee, waived his lien upon them for the price, and they were exclusively under the dominion of the vendee. The possession of the sheep after this, by the vendor, was in the character of an agent or servant of the defendant.

Here can be no ground for the defendant to claim a rescision of the contract. Without considering the other point in the case, we think the judgment should be affirmed.