(Oct. 31, 1918.)

R. F. BICKNELL and J. J. GRAY, Copartners, Respondents, v. OWYHEE SHEEP AND LAND COMPANY, LIMITED, a Corporation, and J. L. GRAY, Appellants.

[176 Pac. 782.]

CONTRACT OF SALE—STATUTE OF FRAUDS—DELIVERY AND ACCEPTANCE.

1. Delivery and acceptance of property sold under an executory contract of sale take the contract out of the statute of frauds.

2. Although the goods remain in the possession of the seller, there may be a receipt by the buyer if the former ceases to hold as owner and agrees to hold as bailee of the latter.

3. The act of the buyer in offering to sell goods which he has contracted to purchase is such an act as constitutes an acceptance thereof, so as to take the contract out of the operation of the statute of frauds.

4. Questions of sale, delivery and acceptance sufficient to take a contract of sale out of the statute of frauds are questions of fact, for the jury, under proper instructions, and if there is sufficient evidence to justify the jury in reaching the conclusion that the goods were delivered and accepted unconditionally, their verdict should not be disturbed.

[As to acceptance and delivery of goods to satisfy the statute of frauds, see notes in 49 Am. Dec. 325; 37 Am. Rep. 16; 96 Am. St. 215; Ann. Cas. 1917B, 566, 572.]

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action in conversion. Judgment for plaintiff. *Affirmed.*

Guthrie & Bowen and A. A. Fraser, for Appellants.

Mere words are not sufficient to constitute a delivery of personal property within the statute. (*Hinchman v. Lincoln,* 124 U. S. 38, 8 Sup. Ct. 369, 31 L. ed. 337; *Moore v. Bixby,* 4 Hun (N. Y.), 802.)

No acceptance or receipt was had, as contemplated by the statute. (*Malone v. Plato,* 22 Cal. 103.) The parties must have the intention to vest the possession in the vendee *discharged of all lien for the price,* and the vendee must accept them as the goods purchased, the assent of the parties to the agreement of sale not being sufficient. (*Devine v. Warner,* 76 Conn. 229, 56 Atl. 562.)

There must be such a transfer of physical possession as places the goods *beyond the control of the vendor* and within the control of the vendee; and such transfer is not accomplished where the goods are left in the possession of the vendor. (*Brunswick Grocery Co. v. Lamar,* 116 Ga. 1, 42 S. E. 366.)

Oppenheim & Hodgin and J. M. Parrish, for Respondents.

"Receipt and acceptance of property sold under an executory contract of sale at any time after making the contract takes it out of the statute of frauds." (*Coffin v. Bradbury,* 3 Ida. 770, 95 Am. St. 37, 35 Pac. 715.)

"If the questions of delivery and acceptance of goods sold to take the sale out of the statute of frauds are submitted to the jury under proper instructions, the verdict will not be disturbed when there is a conflict of evidence." (*Coffin v. Bradbury, supra.*)

The question of whether there was a receipt and acceptance of the chattels by the vendee is a question of fact for the jury.

"Where the evidence discloses part performance by all the parties to the agreement, it removes the bar of the statute of frauds, and may be enforced in a court of equity." (*Deeds v. Stephens,* 8 Ida. 514, 69 Pac. 534; *Idaho Implement Co. v. Lambach,* 16 Ida. 497, 101 Pac. 951; *Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 91.)

A delivery of the goods by the vendor to a common carrier is a delivery to the vendee sufficient to take the contract out of the statute of frauds. (*Bullock v. Tschergi,* 13 Fed. 345, 4 McCrary, 184; *Snow v. Warner,* 10 Met. (Mass.) 132, 43 Am. Dec. 417, 419.)

"The acceptance is a matter for the jury to determine, and the finding must stand, unless the uncontroverted facts are sufficient in law to constitute an acceptance." (*Dauphiny v. Red Poll Creamery Co.*, 123 Cal. 548, 56 Pac. 451; *Devine v. Warner*, 75 Conn. 375, 96 Am. St. 211, 53 Atl. 782; *Bass v. Walsh*, 39 Mo. 192; *Pinkham v. Mattox*, 53 N. H. 600, 605; *Burrows v. Whitaker*, 71 N. Y. 291, 295, 27 Am. Rep. 42.)

"Any act from which it may be inferred that a purchaser has taken possession of the goods purchased as owner presents a question for the jury to determine whether the act was done with intention to accept and thus take the case out of the statute of frauds." (*Gray v. Davis*, 10 N. Y. 285, 295; *Jones v. Reynolds*, 120 N. Y. 213, 24 N. E. 279; *Becker v. Holm*, 89 Wis. 86, 61 N. W. 307.)

What was the intention of the parties is a question for the jury, to be determined under proper instructions from the court. (24 Am. & Eng. Ency. 1047, and authorities cited.)

"Acceptance may be shown by conduct and circumstantial. evidence as well as by express language and acts." (*Greenleaf v. Hamilton*, 94 Me. 118, 46 Atl. 798; 3 Elliott on Evidence, sec. 2620.)

"Where the goods are retained by the seller as bailee for the buyer, such a delivery would undoubtedly satisfy the requirements of the statute of frauds." (2 Mecham on Sales, sec. 1198; *Spencer v. Hale*, 30 Vt. 314, 73 Am. Dec. 309.)

BUDGE, C. J.—This is an action for the alleged conversion of certain sheep. The cause was tried to a jury and a verdict returned in favor of respondents for the amount prayed in the complaint. This appeal is from the judgment entered on the verdict.

It appears that the appellant J. L. Gray was president and manager and S. D. Phillips, secretary, of the Owyhee Sheep & Land Company, Limited, at the time of the transaction involved herein. Some time prior to July 3, 1914, Bicknell had a conversation with Phillips, concerning the sale of the company's 1914 crop of lambs. At that time Phillips thought they would sell the lambs to another party. Bicknell wanted

a chance to buy them if the other deal should not be consummated. On July 3, 1914, Bicknell, learning that the lambs, or part of them, were being shipped at Rogerson, called Phillips on the telephone, inquired if the lambs were sold, and was told they were not, but that the company was making a shipment, which was then being loaded. Bicknell wanted to buy them and offered $3.50 per head. Phillips asked $3.60. Bicknell offered to "split the difference" and take the lambs that were being loaded, together with those that were still on the range, at $3.55 per head. This price was satisfactory to Phillips, but he said he would have to take the matter up with Gray, the company's manager. Shortly thereafter, Gray called Bicknell on the telephone, and it was agreed that he should take the lambs at $3.55 per head, f. o. b. Rogerson. There were about 4,325 head in the shipment which was then being loaded, Bicknell agreeing to accept Gray's count. The remainder of the lambs, on the range, were to be delivered on or before September 10, 1914. There is a dispute in the evidence as to what notice was to be given for the delivery of the latter. The shipment then being made had already been consigned by appellant company to Rosenbaum Brothers & Company, commission brokers at South Omaha. The shipment was not reconsigned, but was allowed to stand under this consignment at Bicknell's suggestion. After the terms had been agreed upon they were repeated between Gray and Bicknell over the telephone, the latter testifying that during the conversation he wrote them down on one of his contract forms. Bicknell was to send the contract to Rosenbaum Brothers & Company for appellants, and to send a draft for $5,000 to be held to apply on the last shipment, the intervening payments to be made out of the proceeds of the sale of the lambs on the market. Bicknell's testimony is to the effect that during the telephone conversation, and after the agreement for the purchase and sale had been completed, he told Gray he would have one of his men take charge of the sheep when they reached Minidoka; it would be impossible for him to get a man there in time to take charge of them at Rogerson; and that Gray stated it

would not be necessary for Bicknell to send a man, that he and Phillips were going to Omaha anyway, and would be glad to take the sheep there for him, without charge; whereupon it was agreed between them that Bicknell should pay Gray $25 to cover their personal expenses in consideration of Gray's accompanying the sheep for Bicknell from Rogerson to Omaha. That this was the agreement is borne out and corroborated by the testimony of both Phillips and Gray. While the latter's testimony is somewhat contradictory to Bicknell's, under all the evidence the jury was justified in finding that such was the agreement. While en route with the sheep, on the way to Twin Falls, Gray stated to Crouse, a witness for respondents, that he and Phillips were going on through with the lambs and that they were taking them for Bicknell. When they reached Montpelier, Gray stated to Azcuenaga, a witness for respondents, that he had sold the lambs to Bicknell. At Laramie, Gray told Widoe, a witness for respondents, that he had sold the lambs to Bicknell and that he wanted to get out of the contract.

After the telephone conversation between Gray and Bicknell, the latter wrote Rosenbaum Brothers & Company, advising them that he had purchased these lambs and instructing them to use their own judgment in regard to the sale thereof, inclosing a draft for $5,000 and a draft to be filled in for whatever Gray's count should, amount to at $3.55 per head, plus $25 expenses, and also inclosed the contract to be delivered to Gray.

When Gray and Phillips reached Omaha with the lambs, Rosenbaum Brothers & Company turned the contract over to Gray, who refused to sign the same, for the reason, as he stated, that the contract provided that the lambs on the range were to be delivered on or before September 10, 1914, at the option of the buyer, but that according to his understanding the contract should have provided for ten or twelve days' notice. He refused to accept the $5,000 draft, wired Bicknell that he was returning the contract because it was not as agreed upon, and sent him a letter, inclosing the contract, and setting out his objections thereto.

Rosenbaum Brothers & Company notified Bicknell that appellants refused to sign the contract, for the reason that it was not properly drawn in regard to notice of delivery. Bicknell instructed them to withhold all of the proceeds over and above the $3.55 per head, plus $25 expenses.

The lambs were sold by Rosenbaum Brothers & Company for $25,701.37, which was alleged in the complaint to have been the reasonable value of the lambs, and which allegation of value is admitted by failure to deny the same in appellants' answer. Payment was made to the appellants on the basis of $3.55 per head, according to Gray's count, plus $25 expenses, a portion of the payment being made to creditors of the Owyhee Sheep & Land Company, including Rosenbaum Brothers & Company, under instructions from appellants. The balance of the proceeds, after deducting expenses, freight and commissions, amounting to $7,050.92, was retained by Rosenbaum Brothers & Company, who declined to pay the same to either party, pending the result of this litigation.

While appellants' brief contains many specifications of error, the controlling question in the case is: Was there a delivery of the 4,325 head of lambs by appellant Owyhee Sheep & Land Company, Limited, to respondents, at Rogerson, Idaho, on the third day of July, 1914, and an acceptance of the same by respondents? If there were no such delivery and acceptance, respondents' case must fail under appellants' plea of the statute of frauds, to wit: Rev. Codes, sec. 6009, for it is conceded that there was no written contract. If, on the other hand, there were such a delivery and acceptance, respondents should prevail under the record presented to us, for in that event the statute of frauds would have no application. The law is well settled that delivery and acceptance of property sold under an executory contract of sale takes it out of the statute of frauds. (*Coffin v. Bradbury*, 3 Ida. 770, 95 Am. St. 37, 35 Pac. 715.)

While there is authority to the effect that the same person cannot act as agent of the seller to negotiate the sale and as

the agent of the buyer to receive and accept the goods (*Caulkins v. Hellman,* 14 Hun, 330, 47 N. Y. 449, 7 Am. Rep. 461), the prevailing modern rule, and the one applicable to the facts before us, seems to be that: "Although the goods remain in the possession of the seller, yet there may be a receipt by the buyer if the seller ceases to hold as owner and agrees to hold as the bailee of the buyer with his consent." (20 Cyc. 250; *Devine v. Warner,* 75 Conn. 375, 96 Am. St. 211, and extended note thereto, 53 Atl. 782; *Rappleye v. Adee,* 65 Barb. (N. Y.) 589; *Green v. Merriam,* 28 Vt. 801; *Janvrin v. Maxwell,* 23 Wis. 51; *Ex parte Safford,* 2 Low. 563, 21 Fed. Cas. (No. 12,212) p. 142.)

The evidence shows that after the conversation had between Bicknell and Gray over the telephone, the latter stated in substance that they would stop loading and go on with what they had loaded, that they would not load any more, since he had sold to Bicknell, and informed Crouse, who had a number of lambs that he intended to include in Gray's shipment, that he could sell to Bicknell for the same price. Thereupon Crouse stated he would not sell to Bicknell, and would not ship his sheep, but would return the same to the range with Gray's sheep that he was not shipping.

The jury was justified in reaching the conclusion that Gray did not ship all the sheep he intended to ship at that time, or make up a shipment out of the sheep that he had at Rogerson, including Crouse's sheep. This action on Gray's part, coupled with the agreement to accept $25 for his expenses in accompanying the sheep to Omaha, and the count at Montpelier, was sufficient evidence to justify the jury in finding that there was a delivery on the part of the Owyhee Sheep & Land Company and a receipt by respondents.

Furthermore, the evidence is clear that Bicknell was buying the sheep to immediately resell them, of which fact appellants had full knowledge; they had already been consigned by appellants to a commission broker at South Omaha for that purpose, and this consignment was allowed to stand at Bicknell's suggestion, who immediately, and before the lambs

reached South Omaha, notified the commission brokers that he had purchased, and instructed them to sell, these lambs, using their own judgment.

While it is true that no act of a seller of personal property alone can constitute a delivery, taking the contract out of the statute of frauds, without a receipt and acceptance by the buyer, the act of the buyer of goods under a contract within the statute of frauds in offering to sell the goods which he has contracted to purchase is such an act as constitutes an acceptance of the goods so as to take the contract out of the operation of the statute. (*Beedy v. Brayman Wooden Ware Co.,* 108 Me. 200, Ann. Cas. 1913B, 273, 79 Atl. 721, 36 L. R. A., N. S., 76.)

The evidence is sufficient to justify the jury in reaching the conclusion that the sheep were delivered to Bicknell at Rogerson, and that he accepted them unconditionally. (*Snow v. Warner,* 10 Met. (51 Mass.) 132, 43 Am. Dec. 417, 419; *Dean v. Tallman,* 105 Mass. 443; *A. C. Dauphiny & Co. v. Red Poll Creamery Co.,* 123 Cal. 548, 56 Pac. 451.)

Questions of sale, delivery and acceptance sufficient to take a contract of sale out of the statute of frauds are questions of fact, for the jury, under proper instructions, and their verdict should not be disturbed if there is sufficient evidence to justify them in reaching the conclusion that the goods were delivered and accepted unconditionally. (*Coffin v. Bradbury, supra; Idaho Implement Co. v. Lambach,* 16 Ida. 497, 101 Pac. 951; *Devine v. Warner, supra; Bass v. Walsh,* 39 Mo. 192; *Pinkham v. Mattox,* 53 N. H. 600, 605; *Burrows v. Whitaker,* 71 N. Y. 291, 295, 27 Am. Rep. 42; *Gray v. Davis,* 10 N. Y. 285, 295; *Jones v. Reynolds,* 120 N. Y. 213, 24 N. E. 279; *Becker v. Holm,* 89 Wis. 86, 61 N. W. 307; *Smith v. Stoller,* 26 Wis. 671; *Rappleye v. Adee, supra.*)

From what has been said it is apparent that the question must be resolved in favor of respondents. We have examined the specifications of error touching the pleadings, the motion for nonsuit, the admission of evidence and the giving and refusing to give certain instructions, and find them with-

out merit. The judgment is affirmed. Costs are awarded to respondents.

Morgan and Rice, JJ., concur.

Petition for rehearing denied.