820 P.2d 707

**Dell N. MITCHELL, Plaintiff–Respondent–Cross Appellant,**

v.

**Melvin BARENDREGT, Defendant–Appellant–Cross Respondent.**

**No. 17517.**

Court of Appeals of Idaho.

Nov. 27, 1991.

Parsons, Smith, Stone & Fletcher, Burley, for appellant-cross respondent. William Parsons argued.

Ling, Nielsen & Robinson, Rupert, for respondent-cross appellant. Roger D. Ling argued.

ON REHEARING 1990 OPINION NO. 130, ISSUED SEPTEMBER 5, 1990, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFORE.

BENGTSON, Judge, Pro Tem.

This action arises out of an alleged contract between the parties for the sale of potatoes and implicates certain provisions of the Uniform Commercial Code as adopted in Idaho. For reasons stated below, we vacate the judgment entered in favor of the respondent, Dell M. Mitchell, and remand the case for a new trial.

In 1984, appellant, Melvin Barendregt, a potato farmer in southern Idaho, grew potatoes under contracts with Ore–Ida Foods, Inc. and J.R. Simplot Company. In that same year, Barendregt also entered into a preseason contract to grow potatoes for Ore–Ida in 1985. This contract is hereinafter referred to as the "Ore–Ida preseason contract." In early 1985, at about the time Barendregt had planted his 1985 crop, he was offered a contract by Simplot to grow 15,000 c.w.t. in 1985; his 1984 contract with Simplot was only for 10,000 c.w.t. of potatoes. The potatoes which Barendregt was to grow under the 1985 Simplot contract would be harvested from a tract known as the "Kerbs place." Also in early 1985, Barendregt entered into yet another contract with Ore–Ida (in addition to the preseason contract) to grow and deliver an additional 21,999 c.w.t. of first net potatoes. This latter contract is hereinafter called "Ore–Ida contract # 2111."

Thus, Barendregt was under an obligation to grow, harvest and deliver, in 1985, sufficient potatoes to fill all three contracts—i.e., the Ore–Ida preseason contract, Ore–Ida contract # 2111 and the Simplot contract. Based on historical yields, he was concerned about his ability to grow and deliver a quantity of potatoes sufficient to meet the total requirements of the three contracts.

Barendregt was acquainted with another farmer, Dell Mitchell. He knew that Mitchell grew potatoes on a parcel of thirty-four acres near Declo, Idaho, and that Mitchell's potatoes were not committed under any contract in 1985. Barendregt contacted Mitchell to determine whether Mitchell would be interested in "going in on" Barendregt's contract with Simplot. Mitchell expressed his interest in doing so.

Subsequently, Barendregt was advised by Simplot that it would not accept, under its contract with Barendregt, potatoes grown in the Declo area. Barendregt informed Mitchell of this fact but asked Mitchell if he was interested in committing potatoes grown on his Declo farm to Barendregt's Ore–Ida contract # 2111. Mitchell accepted the proposal that his potatoes grown at Declo be used to fulfill Barendregt's contract # 2111. Mitchell, however, insisted that his "name" be included on Ore–Ida contract # 2111.

Soon thereafter, Barendregt telephoned Mitchell and told him that Ore–Ida did not want to put Mitchell's name on contract # 2111 but the contract would show that Mitchell held a "lien" on the potatoes which Barendregt agreed to furnish to Ore–Ida under the contract. At that time Barendregt explained that showing Mitchell as a lienholder would provide him the same protection, as far as "settlement" (payment), for the potatoes was concerned, as would be provided if Mitchell were named as a grower under the Ore–Ida contract.[1]

When the final draft of contract # 2111 was prepared by Ore–Ida, it was signed by Barendregt and a representative of Ore–Ida, but was not signed by Mitchell. It clearly stated that the potatoes to be delivered by Barendregt under the contract were to be grown on parcels owned by Barendregt, by another individual from whom Barendregt had leased farmland, and by Mitchell. The contract contained Barendregt's covenant that the potato crop covered by the contract would not be mortgaged, assigned or encumbered in any manner except to "IB & T" (apparently, Idaho Bank and Trust) and to Mitchell. Although the contract obligated Barendregt to deliver 21,999 c.w.t. of first net potatoes to Ore–Ida, it did not state that any specific portion of the total 21,999 c.w.t. was required to be harvested from any particular parcel of land described therein. The record indicates that the purpose of identifying the ground upon which the potatoes would be grown was to enable field representatives of Ore–Ida to inspect the ground, to inspect the crops growing thereon and to determine what chemicals were being used.

There was no written agreement executed by Barendregt and Mitchell evidencing their oral understanding that Mitchell's potatoes or any part thereof would "go in on" Ore–Ida contract # 2111. However, both Mitchell and Barendregt "considered" the Mitchell potatoes "committed" to the

fulfillment of Barendregt's Ore–Ida contract # 2111 and both apparently understood that Mitchell could not otherwise dispose of his potatoes until Ore–Ida contract # 2111 had been fulfilled.

Some months later, Barendregt commenced his potato harvest. After determining that the few acres which had been harvested demonstrated that the per-acre average yield was significantly greater than he had anticipated, Barendregt informed Mitchell that none of the latter's potatoes would be needed to fulfill Ore–Ida contract # 2111. Barendregt continued his harvest and delivered to Ore–Ida sufficient potatoes to meet his obligation to deliver 21,999 c.w.t. of first net potatoes under Ore–Ida contract # 2111. No part of Mitchell's potatoes was used to fulfill that contract. However, in fulfilling the contract, Barendregt delivered to Ore–Ida 4,002 c.w.t. of potatoes which had been grown on yet another parcel—a fourth parcel—owned by a party named Kerbs. The potatoes grown on the Kerbs place had previously been committed to Barendregt's contract with Simplot and the Kerbs ground was not listed in Ore–Ida contract # 2111 as one of the parcels upon which the potatoes were to be grown.

Mitchell, upon being advised by Barendregt that none of his potatoes would be used to fulfill Ore–Ida contract # 2111, stored his potatoes and later sold them on the open market in the spring of 1986, at a price substantially lower than the price specified in Ore–Ida contract # 2111. Prior to so selling his potatoes in 1986, Mitchell was ready, willing, able and anxious to apply his potatoes in fulfillment of Barendregt's obligation under contract # 2111.

Following Barendregt's delivery of the potatoes under Ore–Ida contract # 2111, Ore–Ida issued and delivered to Barendregt, in payment for the potatoes, a check payable jointly to Barendregt, Mitchell and IB & T.[2] Barendregt endorsed the check

---

1. As discussed later in this opinion, there was a sharp conflict in the testimony of the parties as to what was said during conversations regarding the *quantity* of potatoes which Mitchell was

to supply in fulfillment of the Ore–Ida contract # 2111.

2. This check was apparently issued with Barendregt, Mitchell and IB & T as joint payees,

and—without authority from Mitchell—added Mitchell's name as an endorsement. Barendregt then negotiated the check, apparently in favor of IB & T.

Mitchell later filed a complaint which included a count for breach of contract, alleging that Barendregt had orally agreed to include Mitchell's potato crop for the year 1985 under Barendregt's Ore–Ida contract # 2111, but that Barendregt, in breach of the agreement with Mitchell, would not permit any of Mitchell's potatoes to be used to fulfill Ore–Ida contract # 2111. The complaint also contained a count alleging actual fraud by Barendregt and a count alleging the perpetration of constructive fraud by Barendregt. Mitchell sought compensatory damages as to each such count and also sought an award of punitive damages. The trial court refused to submit the issue of punitive damages to the jury.

The matter was tried to a jury on all other issues and at the conclusion of plaintiff's case in chief, and again at the close of the evidence, Barendregt moved for a directed verdict on all counts. He argued as to the fraud claims that there was insufficient evidence of the elements of fraud to justify submitting the fraud counts to the jury. With respect to the breach of contract, Barendregt contended that no contract had been formed because there was no "meeting of the minds" as to the quantity of Mitchell's potatoes which were to "go in on" Ore–Ida contract # 2111. He also contended that even if there had been an oral contract formed between the parties it was unenforceable under I.C. § 28–2–201 because there was no writing signed by him specifying the quantity of Mitchell's potatoes which were to be used by Barendregt in fulfilling Ore–Ida contract # 2111. The motion for a directed verdict was denied at the close of Mitchell's case in chief and was again denied when renewed at the close of the evidence.

A general verdict was returned finding for Mitchell on the breach of contract theo-

ry and awarding him damages on that claim in the amount of $14,393.08. The jury also found for Mitchell on the actual fraud issue and awarded damages on that claim in the amount of $15,893.08. On the constructive fraud issue, the jury also found for Mitchell and awarded damages of $14,393.08. The trial court, based on the verdict, entered judgment in favor of Mitchell for $15,893.08, plus prejudgment interest of $3,988.04 and attorney fees in the amount of $6,627.04.

Following the entry of judgment in favor of Mitchell, Barendregt moved for judgment n.o.v. under I.R.C.P. 50(b) and, alternatively, for a new trial pursuant to I.R.C.P. 59(a). In support of his motions, he contended, inter alia, that the evidence was insufficient to justify the verdict or was contrary to law because there was no evidence showing there was a written memorandum specifying a quantity of goods as required by I.C. § 28–2–201(1), and that the evidence was insufficient to establish, clearly and convincingly, all the elements of either constructive or actual fraud. The trial court denied Barendregt's post-judgment motions and this appeal ensued.

On appeal, Barendregt asserts numerous errors:

(1) The denial of Barendregt's motion for directed verdict made at the close of Mitchell's case in chief and renewed at the time both parties had rested;

(2) The denial of Barendregt's motion for judgment n.o.v. and alternative motion for new trial;

(3) The admission of evidence on Mitchell's alleged damages, the evidence being speculative and without adequate foundation;

(4) The admission of evidence of the alleged oral contract between the parties in violation of the writing requirement of I.C. § 28–2–201;

(5) The giving of jury instructions 10, 11, 12 and 17 and the submission to the jury of the breach of contract, fraud and constructive fraud issues;

because Mitchell and IB & T are identified in Ore–Ida contract # 2111 as holding liens on the

crop.

(6) The awarding of prejudgment interest;

(7) Erroneous evidentiary rulings on the measure and proof of damages;

(8) The awarding of attorney fees; and

(9) Insufficiency of the evidence to support the verdict.

Mitchell has cross-appealed, challenging the trial court's refusal to submit the issue of punitive damages to the jury.

In disposing of this appeal we need only discuss the following contentions of Barendregt:

(1) That the trial court erred in submitting the fraud claims to the jury because there was insufficient evidence to support the fraud allegations and thus the trial court should have granted Barendregt's motion for a directed verdict with regard to fraud;

(2) That the trial court erred in denying Barendregt's motion for a directed verdict because there was no evidence of a writing, required by I.C. § 28–2–201(1), specifying the quantity of Mitchell's potatoes which were to be used by Barendregt in fulfilling Ore–Ida contract # 2111;

(3) That the trial court erred in denying the motions for judgment n.o.v. and alternatively for a new trial.

Of course, we must also discuss the issue raised on Mitchell's cross-appeal, i.e., whether the trial court erred in refusing to submit Mitchell's claim for punitive damages to the jury. We will address each of these issues in turn.

## The Fraud Claims

In count two of his complaint Mitchell alleges that Barendregt represented to him that if Mitchell agreed to commit his 1985 potato crop to Ore–Ida contract # 2111, all of his potatoes would be sold under that contract and he would be paid therefor at the price specified in the contract. Mitchell also alleges that such representation was false. Essentially, Mitchell pleads a count for actual fraud on the part of Barendregt.

Count three, also sounding in fraud, alleges that—by virtue of the oral agreement between the parties contemplating that Mitchell's potatoes would be used to fulfill Barendregt's Ore–Ida contract # 2111—a relationship of trust and confidence was created between the parties. It avers that Barendregt breached the duties created thereby when he did not use any of Mitchell's potatoes to fulfill the contract.

In support of his motion for a directed verdict, Barendregt argued, inter alia, that the evidence as to fraud was insufficient to submit the fraud claims to the jury. The trial court denied the motion.

■ A party who moves for a directed verdict necessarily admits the truth of the adverse evidence and every legitimate inference which may be drawn therefrom in the light most favorable to the opposing party. *Fouche v. Chrysler Motors Corp.,* 107 Idaho 701, 692 P.2d 345 (1984); *All v. Smith's Management Corp.,* 109 Idaho 479, 708 P.2d 884 (1985). A motion for a directed verdict should not be granted if there is substantial evidence to justify submitting the case to a jury. *Fouche v. Chrysler Motors, supra. Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977). Stated somewhat differently, a motion for directed verdict should not be granted if the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper. *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974).

■ A motion for directed verdict presents the trial judge with a pure question of law, that is, whether the evidence presented would allow reasonable minds to conclude that a verdict in favor of only one of the parties was proper. *See Sidwell v. William Prym, Inc.,* 112 Idaho 76, 730 P.2d 996 (1986). On appeal, the standard of review is the same—whether, as a matter of law, a party produced sufficient evidence (not a mere scintilla) from which reasonable minds could only conclude that a verdict in favor of that party was proper. *Id.; Gmeiner v. Yacte,* 100 Idaho 1, 592 P.2d 57 (1979). Also, it is axiomatic that

fraud must be proven by clear and convincing evidence. *Gneiting v. Clement,* 96 Idaho 348, 528 P.2d 1283 (1974); *Zuhlke v. Anderson Buick, Inc.,* 94 Idaho 634, 496 P.2d 95 (1972).

■ The elements of actionable fraud or misrepresentation generally consist of an untrue representation or statement of *past or existing material fact,* which representation is made with the speaker's knowledge of its falsity or ignorance of its truth; his intention that it should be acted on by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is made and reliance on the representation; his right to rely upon it; and the damage occasioned thereby. *Weitzel v. Jukich,* 73 Idaho 301, 251 P.2d 542 (1952); *Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980); *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978).

Our review of the evidence adduced at the trial in this case convinces us that Mitchell failed to present evidence upon which reasonable minds could conclude that the essential elements of fraud were proven by a preponderance of the evidence, let alone by clear and convincing evidence. As a result, we conclude that a directed verdict should have been entered with respect to Mitchell's claims of fraud.

■ In attempting to prove actual fraud, Mitchell alleged that Barendregt made four representations to him which were fraudulent. We will consider each of these statements in turn, and explain why none of them constitute grounds for fraud. The first statement consisted of Barendregt's representation to Mitchell that Barendregt would need probably all, but at least half, of Mitchell's potatoes to fill Ore–Ida contract # 2111. Barendregt denies ever making this statement, however, for the purpose of our review we will assume the truth of Mitchell's testimony. Barendregt's statement regarding how many of Mitchell's potatoes will be needed to fill the contract was a prediction as to an event to occur in the future. Such statements are not regarded as statements of past or existing fact, but are regarded as opinion only,

on which the fraud claimant has no right to rely.

> [A] representation consisting of [sic] promise or a statement as to a future event will not serve as basis for fraud, even though it was made under circumstances as to knowledge and belief which would give rise to an action for fraud had it related to an existing or past fact.

*Sharp v. Idaho Investment Corp.,* 95 Idaho 113, 122, 504 P.2d 386, 395 (1972). The law requires the plaintiff to have formed his or her own conclusions as to such future events, and will not justify or remedy the plaintiff's reliance and change of position based on another's prediction or opinion.

■ The second alleged misrepresentation consists of Barendregt's representation to Mitchell that Mitchell's potatoes would be used to fill Ore–Ida contract # 2111 to the extent that Barendregt had insufficient potatoes to fill the contract. This statement constitutes a promise on the part of Barendregt to do something in the future. If, at the time this promise was made, Barendregt did, in fact, intend to use Mitchell's potatoes to fill the Ore–Ida contract # 2111, the fact that he subsequently broke that promise does not create a cause of action for fraud, but for breach of contract. If, however, at the time the promise was made, Barendregt had no intention of performing the promise, Barendregt misrepresented a material fact: his present intention. "All but a few courts regard a misstatement of a present intention as a misrepresentation of a material fact; and a promise made without the intent to perform it is held to be a sufficient basis for an action of deceit, or for restitution or other equitable relief." W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts, § 109, pp. 762–65 (5th ed. 1984). Idaho follows this majority rule. *Pocatello Security Trust Co. v. Henry,* 35 Idaho 321, 329, 206 P. 175, 177 (1922); *see also Tenzer v. Superscope, Inc.,* 39 Cal.3d 18, 216 Cal. Rptr. 130, 702 P.2d 212 (1985), *Von Hake v. Thomas,* 705 P.2d 766 (Utah 1985), and *Mountain Fir Lumber v. Employee Benefits Insurance,* 64 Or.App. 312, 667 P.2d 567 (Or.App.1983).

However, in order for Mitchell to prove that Barendregt misrepresented his intention about performing the promise, Mitchell must prove by clear and convincing evidence that at the time of making the promise, Barendregt had no intention to perform the promise. We hold that Mitchell failed to present clear and convincing evidence from which a jury could conclude that Barendregt had no intention of using Mitchell's potatoes at the time he promised to do so. Absent such evidence, Mitchell has failed to prove an essential element of his fraud claim, that Barendregt misrepresented an existing material fact when he promised to use Mitchell's potatoes.

The third misrepresentation alleged is Barendregt's statement to Mitchell that Mitchell could not be included as a grower in the Ore–Ida # 2111 contract. In reviewing the record, we could find no evidence to support Mitchell's contention that this statement was false; that contrary to the alleged misrepresentation, Ore–Ida either wanted or agreed to have Mitchell included as a grower in the contract. Because the jury could not have reasonably concluded that this representation was false, this representation cannot form the basis of an action for fraud.

■ The fourth alleged misrepresentation is Barendregt's statement to Mitchell that Mitchell's right to deliver potatoes under the Ore–Ida contract would be assured by identifying Mitchell as a lienholder in the contract. It was disputed at trial whether Barendregt actually made this statement to Mitchell. It is undisputed, however, that if Barendreft had made such a statement, it would have been false. Even if we assume, though, that Barendregt made this false statement to Mitchell, we hold that Mitchell could not justifiably rely on it. Such a statement by Barendregt would have been Barendregt's legal opinion as to Mitchell's rights and status as a lienholder under Ore–Ida contract # 2111. Such a statement of law is a mere assertion of opinion, upon which Mitchell had no right to rely. An exception to this rule would apply if Barendregt and Mitchell shared a relationship such that Mitchell would have been entitled to rely on Barendregt's opinion of the law. However, no such relationship existed between Mitchell and Barendregt, and Mitchell's reliance on Barendregt's legal opinion was not justifiable.

■ Mitchell also assigns error to this court's prior ruling before granting Mitchell's petition for rehearing that, as a matter of law, his constructive fraud claim was unfounded. "[C]onstructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence and resulting in damage to another. Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists." *McGhee v. McGhee*, 82 Idaho 367, 371, 353 P.2d 760, (1960) Mitchell argues that such a relationship of trust and confidence existed in this case for two reasons: (1) Mitchell trusted Barendregt, and (2) as parties to a contract, Mitchell and Barendregt were obliged to act in good faith toward one another. The law of contracts is clear that neither of these facts is sufficient to establish a relationship of trust and confidence from which the law will impose fiduciary obligations between Mitchell and Barendregt. Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends. All the evidence presented in this case shows that Mitchell and Barendregt shared none of these relationships, but were parties who entered into an agreement at arms length. Because no legally enforceable relationship of trust and confidence existed between Mitchell and Barendregt, no action for constructive fraud can arise from their dealings.

With respect to each of the misrepresentations alleged, Mitchell has failed to present evidence upon which a jury could reasonably find, by clear and convincing evidence, all the required elements of an action for either actual or constructive fraud. Therefore, the trial court erred in

denying Barendregt's motion for a directed verdict on the fraud claims.

### The Contract Claim

▉ We next focus upon Barendregt's interrelated contentions that the trial court erred in denying his motion for a directed verdict on the breach of contract claim and in denying his motion for judgment n.o.v. and alternative motion for new trial, and in admitting, over his objection, testimony concerning the terms of the oral agreement between the parties hereto. Rule 59(a), I.R.C.P., provides that a new trial may be granted on all or part of the issues in an action because of, inter alia, error in law occurring at the trial. Barendregt argues that the trial court erred in admitting testimony concerning the terms of the oral agreement between the parties, and in refusing to order a directed verdict in his favor.

Central to these contentions is I.C. § 28–2–201, which, in pertinent part, reads:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

. . . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . . . .

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this

provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted....

This statute does not set forth requirements necessary to prove the *formation* of a contract for the sale of goods; rather, it prescribes the requirements for *enforceability* of such a contract.

Here, it is clear from the evidence adduced at trial that there was no written agreement signed by the parties evidencing or memorializing their oral agreement. Under the statute, however, an oral agreement is enforceable provided that some writing sufficient to indicate that a contract has been made between the parties has been signed by the party against whom enforcement is sought; but the contract is *not* enforceable "beyond the *quantity of goods shown in such writing.*" (Emphasis added).

The Comment to the Official Text of the statute explains that there are "three definite and invariable requirements" as to the contents of the required written memorandum:

First, it must evidence a contract for the sale of goods; second, it must be "signed," a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

These three requirements are also identified in case law. *Alaska Independent Fishermen's Marketing Association v. New England Fish Company*, 15 Wash. App. 154, 548 P.2d 348 (1976); *Southwest Engineering Co. Inc. v. Martin Tractor Co.*, 205 Kan. 684, 473 P.2d 18 (1970); *Hankins v. American Pacific Sales Corp.*, 7 Wash.App. 316, 499 P.2d 214 (1972).

In rendering his decision denying Barendregt's motion for directed verdict at the close of Mitchell's case in chief, the trial judge concluded that because Barendregt signed Ore–Ida contract # 2111, which listed Mitchell's property as a part of the ground upon which Barendregt was to grow potatoes under such contract, there

was—as required by I.C. § 28–2–201—a writing, signed by the party against whom enforcement was sought, sufficient to indicate that a contract had been made between the parties hereto. We agree. The court's conclusion is consistent with the Comment to the Official Text following I.C. § 28–2–201:

> All that is required is that the writing afford a basis for believing that the oral evidence rests on a real transaction.

The writing signed by Barendregt, i.e., Ore–Ida contract # 2111, which, with Mitchell's knowledge and consent, listed Mitchell's real property as one of those parcels upon which potatoes would be grown under the contract, afforded an adequate basis for believing that the parties had entered into a "real transaction."

However, we must disagree with the trial judge's conclusion that the quantity of potatoes (21,999 c.w.t.) specified in Ore–Ida contract # 2111 satisfied the "quantity" requirement of I.C. § 28–2–201. Although that contract specified the quantity of potatoes which Barendregt was obligated to furnish Ore–Ida, it failed to specify or define the quantity which Mitchell was obligated to furnish Barendregt in order to meet the latter's obligation under Ore–Ida contract # 2111. Similarly, it failed to specify or define the quantity of goods which Barendregt was to acquire from Mitchell to apply on the contract.

We conclude that, although the writing (Ore–Ida contract # 2111) relied upon by the trial court satisfied the statutory requirement of "a writing sufficient to indicate that a contract for sale" had been made between Barendregt and Mitchell, such writing was insufficient to meet the "quantity of goods" requirement because it did not in any way specify quantity *inter sese*. The statute unequivocally provides that such an oral contract between the parties "is not enforceable under this paragraph beyond the quantity of goods shown in such writing." Thus, because the writing relied upon—Ore–Ida contract # 2111— did not specify *any inter sese* quantity, the oral contract was unenforceable under I.C. § 28–2–201(1).

Mitchell contends that even if his oral contract with Barendregt did not meet the statutory requirements, it was, nevertheless, enforceable on the theory of acceptance of goods, citing *Bicknell v. Owyhee Sheep & Land Co.*, 31 Idaho 696, 176 P. 782 (1918). That case is inapposite to the case at bar. *Bicknell* was predicated upon Rev.Code Sec. 6009 which, in pertinent part, provided that an agreement for the sale of goods, chattels or things in action, at a price not less than two hundred dollars, was invalid in the absence of some written note or memorandum thereof signed by the party to be charged "unless the buyer accept and receive part of such goods and chattels...." In *Bicknell* the Supreme Court noted that the evidence was "sufficient to justify the jury in reaching the conclusion that the sheep were delivered to [the buyer] ... and that he accepted them unconditionally." 31 Idaho at 703, 176 P. at 784.

In the case before us, there is no evidence that Barendregt ever took possession or delivery of any of Mitchell's potatoes, unconditionally or otherwise. Furthermore, Rev.Code Sec. 6009 contained no "quantity" specification similar to that now found in I.C. § 28–2–201(1).

However, the fact that the oral contract here involved does not comply with the provisions of I.C. § 28–2–201(1), does not necessarily mean that such contract is wholly unenforceable. Section 28–2–201(3) provides that a contract for the sale of goods which does not satisfy the requirements of I.C. § 28–2–201(1), is, nevertheless, enforceable:

> (b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; ...

E.g., *Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (1980).

Barendregt admitted while testifying as an adverse party in Mitchell's case-in-chief, that he and Mitchell had entered into an agreement wherein Barendregt

agreed to use Mitchell's potatoes to help fulfill Ore–Ida contract # 2111 to the extent that Barendregt had insufficient potatoes available to meet the 21,999 c.w.t. specified in the Ore–Ida contract. Thus, the jury's verdict that Barendregt and Mitchell had entered into an enforceable agreement is supported by substantial, competent evidence that Barendregt and Mitchell had entered into an enforceable requirements contract.

Our Uniform Commercial Code provides the following with respect to requirements contracts:

> 28–2–306. Output, requirements and exclusive dealings.—(1) A term which measures the quantity by the ... requirements of the buyer means such actual ... requirements as may occur in good faith, except that no quantity unreasonably disproportionate to ... any normal or otherwise comparable prior ... requirements may be tendered or demanded.

I.C. 28–2–306(1). The official comment to this section further states:

> Under this Article [Chapter], a contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party. Nor does such a contract lack mutuality of obligation since, under this section, the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his output or requirements will approximate a reasonably foreseeable figure.

I.C. 28–2–306, Comment to Official Text, No. 2. Pursuant to these provisions, and the jury's verdict that the parties had entered into an enforceable contract, we conclude that Barendregt had a contractual obligation to use Mitchell's potatoes to fill his good faith requirements. This is the standard by which the jury was to determine whether Barendregt had breached his agreement with Mitchell, and, assuming the jury found a breach, it is the standard by which the jury was to measure Mitchell's damages.

Under I.C. § 28–2–201(3)(b) the oral contract was enforceable by virtue of Barendregt's testimonial admission of the existence of the oral agreement, however, that contract was not enforceable beyond the quantity admitted by Barendregt, i.e., the quantity needed to fill his good faith requirements under Ore–Ida contract # 2111. On remand, the jury must determine whether Barendregt, under the standard set forth in I.C. 28–2–306 and the corresponding comment, breached his obligation to use Mitchell's potatoes to meet his good faith requirements. If the jury determines that Barendregt breached this duty, the jury must also determine the damages Mitchell sustained as a result of that breach; i.e., how many potatoes Mitchell would have been able to sell under Ore–Ida contract # 2111 had Barendregt acted in good faith.

 Barendregt also contends that the trial court "erred in admitting parol evidence of the alleged contract between Mitchell and Barendregt in that such evidence was contrary to I.C. § 28–2–201." During the course of Mitchell's direct examination, Barendregt objected to Mitchell's testimony concerning the terms of his oral agreement with Barendregt (in particular, as to the quantity of Mitchell's potatoes which were to be used to fulfill Ore–Ida contract # 2111) upon the grounds that such testimony was irrelevant, "in violation of the statute of fraud [sic] and ... in violation of the parole evidence rule." The objection was overruled and Mitchell was permitted to testify as to his conversations with Barendregt. We conclude that the trial court did not err in permitting Mitchell to so testify. That evidence was relevant to the issue of contract *formation*.

In summary, with respect solely to the breach of contract claim, we hold there was substantial competent evidence to justify the trial court's action in submitting to the jury the questions of whether a contract had been formed between the parties, whether the contract had been breached by Barendregt, and the damages, if any, sus-

tained by Mitchell if a breach occurred. However, any contract found by the jury to have been formed was not enforceable beyond the quantity of goods admitted by Barendregt in his testimony. I.C. § 28–2–201(3)(b). Consequently, because there was substantial evidence to justify submitting to the jury the issue of whether a contract had been *formed* between the parties, but because any such contract would have been *unenforceable* beyond the quantity of goods admitted by Barendregt in his testimony, we conclude that the trial court erred in failing to grant Barendregt's motion for a directed verdict on the breach of contract claim on all issues encompassed by the motion except: (1) The question of whether or not a contract had been formed by the parties; (2) The question of whether or not Barendregt breached the contract, if one had been formed; and (3) The amount of damages, if any, sustained by Mitchell, as a result of Barendregt's alleged breach.

### The Punitive Damages Issue

Mitchell has cross-appealed asserting as error the trial court's refusal to submit the punitive damages issue to the jury. At the conclusion of Mitchell's case in chief, the trial court granted Barendregt's motion for a directed verdict on such issue stating that if Barendregt had committed fraud in his dealings with Mitchell "there is not ... a fraudulent scheme that is far-flung ... and ... that fraud in and of itself, alone, does not justify punitive damages ... therefore, the plaintiff's count for punitive damages is dismissed."

We believe that the trial court viewed the basis upon which punitive damages may be awarded too narrowly. It has been consistently held that punitive damages may be assessed in contract actions where there is fraud, malice, oppression or other sufficient reason for doing so. *Graves v. Cupic*, 75 Idaho 451, 458–59, 272 P.2d 1020, 1025 (1954); *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969). In a more recent decision, *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), the Court stated:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." [Citations omitted.] The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence" [citation omitted]; ... or simply "deliberate or willful." [Citation omitted.]

104 Idaho at 905, 665 P.2d at 669.

A motion for a directed verdict admits the truth of the opposing party's evidence, and that party is entitled to the benefit of every inference favorable to him which may be drawn legitimately from any evidence before the court at the time the motion is made. *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 692 P.2d 345 (1984); *All v. Smith's Management Corp.*, *supra*. In our exercise of free review of the trial court's order directing a verdict in favor of Barendregt on the punitive damages issue, we are satisfied that Mitchell produced sufficient evidence from which reasonable minds—rational triers of fact—could at least conclude that Barendregt acted in "a deliberate or willful way so as to oppress" Mitchell. *White v. Doney*, 82 Idaho 217, 351 P.2d 380 (1960). Therefore, the trial court erred in failing to submit the punitive damages issue to the jury.

In summary, the judgment is vacated, and the case is remanded to the district court for a new trial on the following issues only: (1) whether Barendregt breached his duty to use Mitchell's potatoes to meet his good faith requirements; (2) assuming a breach, the damages, if any, sustained by Mitchell as a result of that breach; and (3) Mitchell's claim for punitive damages. Because both parties have prevailed in part, no costs or attorney fees on appeal are awarded.

WALTERS, C.J., and SILAK, J., concur.