17 P.3d 247

**Mickey POLK, and Carla Polk, husband and wife, Plaintiffs–Respondents Cross Appellants,**

v.

**Robert D. LARRABEE, Family Home Center, Inc., and Danny B. Laws and Steven C. Nash, as Personal Representatives of the Estate of Roy B. Laws, Defendants–Appellants Cross Respondents.**

No. 25098.

Supreme Court of Idaho, Lewiston, October 2000 Term.

Dec. 15, 2000.

Charles A. Brown, Lewiston, for appellants.

Clark & Feeney, Lewiston, for respondents. Ronald T. Blewett argued.

KIDWELL, Justice.

This appeal results from the district court's decision to treble damages on a jury verdict, which found in favor of the employees in a wage claim dispute. The employer claims that treble damages were not appropriate under the Idaho Code.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In November of 1994, Mickey Polk came to Idaho to discuss a job opportunity with Roy B. Laws and Robert D. Larrabee. Laws and Larrabee were opening a manufactured housing distributorship in Idaho called the Family Home Center. As compensation for running the new Nampa, Idaho, store, Polk would receive a $2,000.00 monthly salary, a 5% commission on all homes sold at the Nampa location, and a 25% commission on all homes that he personally sold. Polk and his wife Carla accepted the offer, and in January of 1995, relocated from Texas to Nampa.

Upon arriving in Idaho, Polk was provided with two weeks training at the company's main headquarters in Lewiston. After the

training, Polk returned to Nampa to manage the store. Shortly thereafter, Carla Polk was hired as a salesperson at the Nampa store, which compensated her by providing a commission of 20% on all manufactured homes she sold.

In March of 1995, Polk was offered the position of general manager of Family Home Center in Lewiston. On April 5, 1995, Polk and his wife Carla moved to Lewiston and Polk began work as the general manager, while Carla continued as a salesperson on the Lewiston lot. As compensation for running the company, Polk was to receive, in addition to his previous package, a 20% share of the profits of the company, as well as a 5% commission on every home sold by the company. At trial he testified that he was promised an income of at least $150,000.00 for taking the general manager position, and that Larrabee agreed to his terms for figuring the company's profits.

Soon after taking over the responsibilities of general manager, Polk made discoveries that caused him to question the financial soundness of the company. He testified that he found the company owed a significant amount of money on past due debts, and that the company had spent $80,000 to $120,000 from customer trust accounts.

On January 16, 1996, the Polks terminated their employment with the Family Home Center. On that day, they gave a written demand for payment of the salary and commissions they felt they were entitled to. Polk claimed $1,000.00 for his salary, $10,813.69 worth of sales commissions, and $18,698.00 for his 20% share of Family Home Center's profit, as calculated by him. Carla claimed $21,283.65 of commissions for homes she had sold. Family Home Center, however, refused to pay any of the claims except for the $1,000.00 salary owed to Polk. It claimed that the company did not owe the Polks any of the commissions because the sales upon which the commissions were based had not closed.

The Polks filed suit against Family Home Center, Larrabee and the representatives of Law's estate on January 31, 1996. In its answer, Family Home Center claimed that it did not owe any money to the Polks because the sales had not closed. It also counterclaimed that Polk had mishandled Family Home Center funds.

Prior to trial, the Polks hired Court Koep, a certified public accountant, to review Family Home Center's financial status. The accountant discovered what he believed to be discrepancies in Family Home Center's financial records. According to Koep's calculations, Family Home Center earned a profit between April 5, 1995 and January 16, 1996 of $96,440.00, of which Polk claimed a 20% share. Koep arrived at this figure by making certain adjustments to Family Home Center's books. The parties refer to these adjustments as the "thirteenth statement." Family Home Center, on the other hand, claimed it had a loss of $384,375.00 for the year ending December 31, 1995, and that Koep was improperly manipulating the figures to show a profit.

A jury trial began on July 27, 1998. During the trial, the court allowed Koep to testify as to how he made his calculations. Family Home Center objected to Koep's testimony, claiming that he had excluded legitimate business expenses as personal expenses, and that these reductions were not part of the employment contract. The Polks responded that they had not signed Family Home Center's contract, but rather Larrabee had agreed to the terms of the contract drafted by Polk.

On July 2, 1998, Family Home Center made an offer of judgment to the Polks in the amount of $45,000.00. The Polks countered with a settlement offer of $235,000.00. Neither offer was accepted.

Prior to submitting the matter to the jury, the district court granted Family Home Center's motion for a directed verdict disallowing the Polk's claim for punitive damages. On August 5, 1998, the issues of breach of contract and breach of the covenant of good faith and fair dealing went to the jury for determination. On the same day, the jury returned a verdict for the Polks on both counts. The jury awarded Polk $18,698.00 and Carla Polk $11,393.22 in damages.

Following the jury's verdict, the Polks moved the district court to treble the jury's

award. The district court granted the motion and entered judgment in the amount of $90,273.66. The district court then determined that according to this figure, the Polks had recovered in excess of Family Home Center's offer of judgment. The court also determined that the Polks were the prevailing parties and awarded them costs. This award resulted in a final total judgment of $101,944.54. Family Home Center filed its notice of appeal on November 2, 1998, and the Polks filed their cross-appeal on November 20, 1998.

## II.

## ANALYSIS

A. The Amounts Due And Owing To The Polks Were Sufficiently Ascertainable To Allow The District Court To Properly Treble The Jury's Verdict.

### Standard of Review

■ "Determining the meaning of a statute and its application is a matter of law over which this Court exercises free review." *J.R. Simplot Co. v. Western Heritage Ins. Co.*, 132 Idaho 582, 584, 977 P.2d 196, 198 (1999).

### Analysis

■ Family Home Center argues that the district court erred when it trebled the amount of the jury verdict. Family Home Center claims that the trebling provisions of I.C. § 45-617 should not apply because the amount of wages that the Polks claimed was not due and owing at the time they resigned. Family Home Center also asserts that the amount the Polks had claimed was not ascertainable because the wages were based on commissions for the sale of manufactured homes, some of which never actually closed.

On September 24, 1998, the district court entered judgment. The judgment included the amount of the jury award, and an award

of treble damages "pursuant to I.C. § 45–617(4)." At that time, I.C. § 45–617(4) provided [1]:

Any judgment rendered by a court of competent jurisdiction for the plaintiff in a proceeding pursuant to this chapter shall include all costs and attorney fees reasonably incurred in connection with the proceedings and the plaintiff, or the director in his behalf, shall be entitled to recover from the defendant, as damages, three (3) times the amount of unpaid wages found to be due and owing.

Family Home Center argues that this statute should not be applied because, due to the nature of commission sales, the actual amount of wages due to the Polks on the day they resigned could not have been known. It claims that since some of the homes did not close, it would have actually overpaid the Polks if it had paid the amount the Polks had demanded.

While it appears that this issue has never been specifically addressed by this Court in the past, there are a number of cases from the Court of Appeals which are instructive.

In *Smith v. Idaho Peterbilt, Inc.*, 106 Idaho 846, 683 P.2d 882 (Ct.App.1984), Peterbilt, the employer, had refused to pay Smith for wages due on the commission on the sale of trucks. *Id.* at 847, 683 P.2d at 883. Even though the parties agreed that Smith was owed something for the commissions, they disputed the exact amount of the percentage rate of the commissions. *Id.* at 847–48, 683 P.2d at 883–84. After the trial court awarded Smith $5,468.52 for commissions, the court trebled the damages. *Id.*

On appeal, Peterbilt argued that since it had not *wrongfully* withheld payment, the trebling statute did not apply. *Id.* In holding that the damages were properly trebled, the Court of Appeals noted that "the question merely was a sum due and, if so, how much." *Id.* at 849, 683 P.2d at 885. On this issue, the

---

1. While only slightly different, the current version of the wage trebling statute is contained in I.C. § 45-615, which states: "(2) Any judgment rendered by a court of competent jurisdiction for the plaintiff in a suit filed pursuant to this section may include all costs and attorney's fees reasonably incurred in connection with the proceedings

and the plaintiff shall be entitled to recover from the defendant either the unpaid wages plus the penalties provided for in section 45-607, Idaho Code; or damages in the amount of three (3) times the unpaid wages found due and owing, whichever is greater." (1999)

Court of Appeals concluded that "the issue was the method of calculation to arrive at a determination of the commissions owed. The trial court here found the amount owed. I.C. § 45–615(4) was properly invoked." *Id.* at 850, 683 P.2d at 886.

Likewise, in another case from the Court of Appeals, the court determined that the amount of damages became due and owing at the time the employee made the demand, rather than at the completion of the grievance process as argued by the employer. *Kalac v. Canyon County,* 119 Idaho 650, 652, 809 P.2d 511, 513 (Ct.App.1991). In that case, Kalac, a former deputy sheriff for Canyon County, made a written demand for wages under his contract, and for accumulated personal leave after being fired from the sheriff's department. *Id.* at 651, 809 P.2d at 512. In response, the department tendered $2,304.21 which represented the amount the department believed it owed to Kalac. *Id.* Following a grievance hearing, the hearing officer determined that Kalac was entitled to more than the amount offered by the department; rather, it found that he was entitled to the entire amount he had claimed. *Id.*

On appeal, the department claimed that Kalac was not entitled to the thirty-day wage claim penalty in I.C. § 45–606 because the actual amount of the wages due Kalac was not ascertainable until the conclusion of the grievance process. *Id.* at 652, 809 P.2d at 513. In holding that the amount of the claim was due and owing at the time of the demand, the Court of Appeals noted that, "It would be unreasonable to conclude an employee's wages do not become due until after he has completed the employer's grievance proceedings. Such an interpretation of I.C. § 45–606 would compromise the purpose of the Idaho wage claim statutes—to compensate terminated employees as soon as possible." *Id.*

In the present case, Family Home Center argued that the amounts due to the Polks were not due and owing until after the commencement of the lawsuit. However, this is roughly the same argument made to the Court of Appeals in both *Kalac* and *Smith.* In both cases, the Court of Appeals determined that the amount was due and owing at the time of the demand. Likewise, as pointed out above, both decisions focused on the amount that was determined by the finder of fact as the amount owed, rather than the amount that had been claimed. In this case, the Polks made a written demand for commissions and for profit. Following trial, the jury determined that there was an amount due and owing to the Polks at the time they ended their employment with Family Home Center.

■ Additionally, there is the plain wording of the statute which provides, "three (3) times the amount of unpaid wages *found* due and owing." I.C. 45–617(4) (emphasis added). This use of the word "found" indicates that the amount owed is to be determined by the finder of fact. The statute does not refer to the amount of wages that the parties agreed were owing, but the amount that is found to be owing.

Thus, we determine that the amount of damages was due at the time the Polks terminated their employment, as found by the trier of fact.

■ Family Home Center next argues that I.C. § 45–606 and I.C. § 45–617 are mutually exclusive, and that in this case, the Polks cannot be entitled to treble damages under § 45–617 because they chose the 30–day payment remedy of § 45–606.

Idaho Code section 45–606 provides that:

(1) Upon layoff, or upon termination of employment by either the employer or employee, the employer shall pay or make available at the usual place of payment all wages then due the employee by the earlier of the next regularly scheduled payday or within ten (10) days of such layoff or termination, weekends and holidays excluded. However, if the employee makes written request upon the employer for earlier payment of wages, all wages then due the employee shall be paid within forty-eight (48) hours of the receipt of such request, weekends and holidays excluded.

I.C. § 45–606.

In *Hales v. King,* 114 Idaho 916, 762 P.2d 829 (Ct.App.1988), the Court of Appeals set

out the relationship of I.C. § 45–606 and I.C. § 45–617. It held:

> Under the wage law, an employee whose wages are withheld upon termination is entitled to alternative remedies. One remedy is to recover wages for a thirty-day period after the date of termination from employment. I.C. § 45–606. The other remedy is to recover, as damages, three times the amount of wages found due and owing. I.C. § 45–615. However, these remedies are mutually exclusive.

*Hales,* 114 Idaho at 919, 762 P.2d at 832.

Thus, following this rationale, Family Home Center is correct in its claim that the Polks can either recover for treble damages or for thirty-days pay. However, neither this case, nor any other cited by Family Home Center has stated that making a written demand for payment within 48 hours is an election of the thirty-day remedy.

In *Hales,* Hales sent King a written demand for payment within ten days. However, when the Court of Appeals determined that Hales had elected the treble damages remedy it relied on the fact that the treble damages remedy was the remedy claimed by Hales in his complaint. *Id.* at 918–19, 762 P.2d at 831–32. In the current case, the Polk's complaint specifically claimed an award of treble damages. Thus, the Polks did not elect the remedy of thirty-day payment simply because they made a written demand for payment. The controlling fact should be that the Polks requested treble damages in their complaint.

■ Family Home Center next asserts that treble damages are not appropriate because it tendered the wages due within 48 hours of the time they were *lawfully* demanded. Here, Family Home Center argues that it made a full tender of the amount owed within 48 hours of the jury's verdict and thus complied with the requirements of I.C. § 45–606.

As previously noted, the time when the tender must be provided is within 48 hours of the time the written demand was made. This was one of the issues decided by the Court of Appeals in *Hales,* 114 Idaho at 920, 762 P.2d at 833. There, King claimed that since he had tendered an offer prior to judgment, Hales was not entitled to treble damages. *Id.* However, the Court of Appeals found that "permitting a post-complaint tender of wages, even within a reasonable period of time, would simply prolong the time between an employee's termination and when he or she is paid." *Id.*

Here, the record indicates that the Polks provided the written demand for wages on January 16, 1996. Family Home Center tendered payment of the jury verdict on August 7, 1998. Thus, the amount due and owing was not paid within the 48 hours required under the Idaho Code, and therefore, the Polks are entitled to treble damages.

■ Finally, Family Home Center argues that it would be unjust to require it to pay the Polks the amount demanded since it was later proven that the amount demanded was higher than the amount actually owed. However, this argument too has been considered in previous cases. In *Marrs v. Oregon Short Line Railroad Co.,* 33 Idaho 785, 198 P. 468 (1921), this Court considered whether the predecessor statute to I.C. § 45–606 allowed recovery of the thirty-day wage claim penalty for an employee who voluntarily quit his employment and then made a demand for more wages than were actually due. *Id.* at 786–87, 198 P. at 468–69. In holding that the penalty did apply, the Court stated that the statute:

> [p]rovides that upon failure of an employer on demand to pay any wages or salary due to his employee under a contract of employment, he shall be liable as therein provided. The liability arises not from the failure to pay the amount demanded, but from failure to pay any wages or salary due upon demand.

*Id.* at 790, 198 P. at 470.

In the present case, Family Home Center never made a tender of payment of wages due the Polks until after the jury rendered its verdict two and a half years later. Family Home Center argues that it did not know how much was "lawfully due" until after the jury rendered its verdict. However, the jury verdict seems to reflect the amount claimed for a percentage of the profits by Polk. Thus,

Family Home Center will not be allowed to escape the wage claim penalty by claiming that the amount was unascertainable prior to trial. The Polks are entitled to treble damages because Family Home Center failed to tender payment of wages due and owing within 48 hours.

### B. The District Court Properly Allowed The Testimony Of The Polk's Financial Expert.

█ Family Home Center argues that the trial court should have excluded the testimony of Court Koep, the Polk's financial expert, because his calculations were not based on the agreement of the parties. In essence, Family Home Center is asking this Court to reweigh the testimony of both sides and conclude that Larrabee's testimony is more credible than that of Polk or Koep.

█ Contrary to Family Home Center's assertions, this Court is not required, or even allowed to reweigh the credibility of witnesses. "It is the jury's function to assess the demeanor of the witnesses and make a determination of credibility." *State v. Allen,* 129 Idaho 556, 558, 929 P.2d 118, 120 (1996). Further, "as an appellate court, we cannot substitute our own judgment as to the credibility of the witness and the weight given their testimony by the jury." *State v. Clayton,* 101 Idaho 15, 16, 607 P.2d 1069, 1070 (1980).

█ When reviewing a question regarding the admissibility of witness testimony, this Court will examine the record to determine whether there was a clear and manifest abuse of discretion by the trial court. *Empire Lumber v. Thermal–Dynamic Towers,* 132 Idaho 295, 304, 971 P.2d 1119, 1128 (1999). "The trial court has broad discretion in the admission of evidence at trial and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion." *Id.*

In this case, Polk testified that the agreement between himself and Larrabee included compensation to Polk for 20% of Family Home Center's profits. Additionally, Polk testified that the agreement contained a provision that the 20% share of profits would be based on the calculation of a "thirteenth statement." This thirteenth statement, as explained by Polk, was to involve the time frame of Polk's tenure at Family Home Center. Additionally, it was not to include expenses or debts made prior to Polk's employment, and was also not to include non-legitimate business expenses. To arrive at this thirteenth statement, Polk employed Koep, a C.P.A.

On appeal, as at trial, Family Home Center claims that Koep's testimony is not relevant because Polk's account of the agreement was not accurate. However, as stated above, the accuracy of Polk's statement of the agreement was a question for the jury to determine. Here, the jury was provided with sufficient, albeit conflicting, evidence that Larrabee had agreed to the terms of the thirteenth statement. Therefore, the testimony of Koep, as to the computation of the thirteenth statement, was relevant because the jury could have, and in fact did, find the testimony of Polk to be more credible than that of Larrabee. Thus, we hold that the trial court did not abuse its discretion in allowing Koep to testify as to his calculation of the thirteenth statement.

### C. The District Court Properly Denied Family Home Center's Motions For A Directed Verdict And J.N.O.V.

*Standard of Review*

█ When this Court reviews a motion for j.n.o.v. under I.R.C.P. 50(b), the motion is treated as a delayed motion for a directed verdict and the same standard for both is applied. *Quick v. Crane,* 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). When ruling on a motion for j.n.o.v. the trial court must determine whether there is substantial evidence to support the jury's verdict. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 495, 943 P.2d 912, 921 (1997). "Upon a motion for JNOV, the moving party, ... admits the truth of all the adverse evidence and all inferences that can be drawn legitimately from it." *Id.* (citations omitted). It is not a question of no evidence on the side of the non-moving party, but rather, whether there is substantial evidence upon which a jury could find for the non-moving party. *Quick,* 111 Idaho at 763,

727 P.2d at 1191. A finding of substantial evidence in favor of the non-moving party is not found if the Court concludes, "that there can be but one conclusion as to the verdict that reasonable minds could have reached." *Id.* at 764, 727 P.2d at 1192. In deciding a motion for j.n.o.v. the trial court is not allowed to reweigh the evidence or consider the credibility of the witnesses, but instead must draw all inferences in favor of the non-moving party. *Lanham,* 130 Idaho at 496, 943 P.2d at 922.

■ In reviewing a decision to grant or deny a motion for j.n.o.v. or a directed verdict, the appellate court applies the same standard as that applied by the trial court when originally hearing the motion. *Quick,* 111 Idaho at 764, 727 P.2d at 1192. This Court must review the record and draw all inferences in favor of the non-moving party. *Lanham,* 130 Idaho at 496, 943 P.2d at 922. Any conflicting evidence must be construed in favor of the non-moving party, without deference to the decision of the trial court. *Id.*

### Analysis

■ In this case, the jury determined that Family Home Center had breached an express or implied contract, and that it had breached the duty of good faith and fair dealing.

As in the previous issue, Family Home Center is urging this Court on appeal to consider the weight of Larrabee's testimony as more persuasive that that of Polk or Koep. It claims that without Koep's improper testimony, there was no basis for the jury's verdict.

Family Home Center maintains that the jury should have believed the financial statements prepared by its accounting firm, Presnell Gage, rather than the testimony of Koep. Here, the jury heard testimony that according to the calculations of Presnell Gage, Family Home Center had sustained a loss of $384,375.00 for the year of 1995. However, the jury also heard evidence that the Presnell Gage reports were not produced in accordance with Generally Accepted Accounting Principles. Even though Family Home Center did not call its own expert witness to support its figures, it complains that the jury should not have believed the testimony of Koep. It appears, however, that the jury did believe Koep's testimony that the figures in Family Home Center's statements were incorrect.

Additionally, the jury heard the testimony of Jonathan Mingus, who was an assistant manager at Family Home Center at the time of the Polk's employment. He testified that after the Polks had left Family Home Center's employment, Larrabee indicated in a conversation that, "Mr. Larrabee wouldn't pay him. [Larrabee] would have paid [Polk] if he hadn't gone to an attorney, and since he's gone to an attorney he—if he had to he'd show the business as a loss."

■ Clearly the jury had the opportunity to hear the testimonial evidence presented by both sides. While it could have just as easily discounted the testimony of Koep and Polk, the verdict indicates that it found those witnesses to be credible. Because the credibility of witnesses and the weight to be assigned evidence is left to the discretion of the jury, *State v. Clayton,* 101 Idaho 15, 16, 607 P.2d 1069, 1070 (1980), we hold that there was substantial and competent evidence to sustain the jury's verdict.

**D. The District Court Properly Determined That The Polks Were The Prevailing Parties, And Thus Entitled To Costs.**

■ Family Home Center claims that the district court erred in finding the Polks were the prevailing party because the final verdict was significantly less than the Polk's settlement offer. Family Home Center claims that the district court should have given more weight to the parties' offers to settle.

■ For purpose of awarding costs, "[t]he determination of which party prevails on what issues and to what extent is within the discretion of the trial court." *J.R. Simplot Co.,* 132 Idaho at 584, 977 P.2d at 198. In making the determination of whether a trial court abused its discretion, this Court applies the three-factor test articulated in *Sun Valley Shopping Center, Inc., v. Idaho*

*Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Those three factors are: 1) whether the trial court correctly perceived the issue as one of discretion, 2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it, and 3) whether the trial court reached its decision by an exercise of reason. *Id.*

In this case, the district court held that the Polks were the prevailing party. In reaching its decision, the court noted, "I recognize this as being an issue that is left to the discretion of the court." The court then determined that although it was a close call, under an analysis of Rule 54(d), the Polks prevailed because they had recovered a judgment in the amount of $90,273.66.

Idaho Rule of Civil Procedure 54(d)(1)(B) provides:

In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, cross-claims, or other multiple or cross issues between the parties, and the extent to which each party prevailed upon each of such issue or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

Family Home Center claims that the district court abused its discretion when it stated, "I'm placing very little, if any, weight on the offers made by the plaintiffs during the course of proceedings leading up to trial." However, while the parties' offers of settlement should have been a factor in determining which party prevailed, it is clear that it is not the only, or even most significant, factor to be considered. Here the Polks recovered in excess of the amount claimed in their original complaint. They succeeded on their claim of treble damages and on getting an award for Carla Polk's commissions. They also succeeded on what was probably the principal claim of the suit, that of Polk's share of 20% of the company's profits.

Therefore, while the district court could have given more weight to the various settlement offers of the parties, it did not abuse its discretion in holding that the Polks were the prevailing parties under I.R.C.P. 54(d). The decision of the district court on the issue of the prevailing party is affirmed.

## E. The District Court Properly Included The Trebled Damages Award In Its Determination Of Family Home Center's Offer Of Judgment.

■ Family Home Center claims that the district court erred in determining that the Polks had recovered an award in excess of Family Home Center's Rule 68 offer of judgment. Family Home Center argues that the offer of judgment should only be applied to the jury *verdict,* and not the final *judgment* in this case, which included the treble damages.

This Court recently considered a similar claim in the case of *Collins v. Jones,* 131 Idaho 556, 961 P.2d 647 (1998). In that case, the jury awarded Collins $1,896.49 which was then increased by a judicial additur of $3,655.96 for a total judgment of $5,552.45. *Id.* at 557, 961 P.2d at 648. The district court determined that since the total judgment was higher than Jones' offer of judgment of $2,500.00, that Jones was not entitled to costs. *Id.* In affirming the decision of the district court, this Court held that the amount of the judgment to be applied against the offer of judgment was the *"judgment finally obtained* by the offeree." *Id.* at 559, 961 P.2d at 650.

Applying the holding of this Court in *Collins,* we determine that the judgment to be applied to the offer of judgment is the "judgment finally obtained" by the Polks, and not simply the verdict of the jury.

**F. The District Court Did Not Err By Refusing To Allow The Polk's Expert To Testify Concerning The Polk's Claim For Punitive Damages.[2]**

*Standard of Review*

■ "The trial court has broad discretion in admitting expert evidence, and its judgment will not be disturbed on appeal absent a clear abuse of discretion." *Walker v. American Cyanamid Co.*, 130 Idaho 824, 832, 948 P.2d 1123, 1131 (1997). Idaho Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Id.*

*Analysis*

■ Here, the Polks complain that the trial court abused its discretion by refusing to allow their expert to testify concerning the behavior of Larrabee and Laws. Specifically, the Polks contend that the district court erred in determining that the expert would "invade the province of the jury...." The Polks point out that I.R.E. 704 provides that expert testimony which is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id.*

However, this Court has held that "Rule 704 must be read in the light of Rule 702[,and that] [e]xpert testimony is only admissible when the expert's specialized knowledge will assist the trier of fact to understand the evidence and determine a fact in issue." *State v. Walters*, 120 Idaho 46, 55, 813 P.2d 857, 866 (1991). It is evident here that the district court understood this rule when it determined that the expert would be "just telling [the jury] something that was obvious." Therefore, we hold that the district court did not abuse its discretion in excluding the testimony of the Polk's expert.

**G. The District Court Did Not Err In Granting A Directed Verdict On The Polk's Punitive Damages Claim.**

The Polks argue that the district court erred in refusing to allow the issue of punitive damages to go to the jury. They claim that the district court's judgments were inconsistent because early on in the trial the court found evidence to support a claim for punitive damages and allowed them to amend their complaint to add such a claim.

To begin with, the Polks argue that the standard of review to be applied should be the standard applied for a directed verdict, rather than the abuse of discretion standard typically applied to punitive damages claims. In support of their proposition, the Polks cite the Court of Appeals case of *Mitchell v. Barendregt*, 120 Idaho 837, 820 P.2d 707 (Ct.App.1991). In *Mitchell*, the Court of Appeals was faced with an appeal from the trial court's grant of a directed verdict on the issue of punitive damages. *Id.* at 848, 820 P.2d at 718. While the ultimate determination of the court is not important at this stage, it is important that it applied the standard of review of a directed verdict, rather than an abuse of discretion standard. *Id.*

This standard, however, appears to be in conflict with cases from this Court which routinely apply an abuse of discretion standard when reviewing a trial court's decisions regarding punitive damages. *See Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 220, 923 P.2d 456, 465 (1996) ("The decision of a trial court to allow the jury to consider punitive damages rests within the discretion of the trial court." (citing *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 611, 726 P.2d 706, 723 (1986))); *General Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 852, 979 P.2d 1207, 1210 (1999) ("As long as there is sufficient evidence to support the district court's decision not to allow the jury to consider punitive damages, this Court will give deference to that decision." (citing *Fitzgerald v. Walker*, 121 Idaho 589, 593, 826 P.2d 1301, 1305 (1992))).

■ While it does not appear that any of these cases considered the issue of punitive

---

**2.** Neither party on appeal has properly raised the issue of whether both punitive damages and tre-

ble damages can be awarded in the same action. Therefore, we will not consider the issue.

damages in connection with a directed verdict, it would nevertheless create confusion to adopt a separate standard of review for cases dealing with punitive damages simply because the exclusion of punitive damages was accomplished by a directed verdict. Adopting a directed verdict standard would create a confusing double standard simply because the opposing party made a motion for a directed verdict rather than the trial court making the determination on its own. Therefore, this Court will review the district court's grant of directed verdict on the Polks' punitive damages claim for an abuse of discretion.

In the present case, the district court held that after considering the arguments of the parties, it would not allow the punitive damages issue to proceed because, "It's my opinion that what we have in this case is a contract dispute...." The court then noted that the appropriate section for considering punitive damages is I.C. § 6–1604, but that it did not believe that the Polks had met their burden of proof. The court stated:

> I've considered all of the allegations with regard to punitive damages and as I've previously said, the—the—under rule fifty "A", the—the standard for this court is that—that there must be substantial evidence to justify submitting this case to the jury. In my opinion there is not sufficient evidence on the issue of punitive damages upon which a jury could render a verdict that would award punitive damages.

Thus, it appears that the district court did not abuse its discretion. It realized that it had the discretion to allow or prevent the issue of punitive damages to go to the jury. It acted consistent with legal standards applicable to punitive damages, and as indicated by its comments, it reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc.*, 119 Idaho at 94, 803 P.2d at 1000. Thus, we hold the district court did not abuse its discretion in determining not to allow the jury to consider the Polks' claim for punitive damages.

**H. Neither Side Is Entitled To Attorney Fees On Appeal.**

In this case, both sides have claimed attorney fees under I.C. § 12–120. However, this Court has previously determined that I.C. § 12–120 is not an appropriate source for awarding attorney fees in wage claim disputes.

In *Shay v. Cesler*, 132 Idaho 585, 977 P.2d 199 (1999), the Court held that I.C. § 45–612(2) was the exclusive remedy for attorney fees available to an employer when an employee has brought a claim for wages. *Id.* at 587–88, 977 P.2d at 201–02.

Likewise, in *Bilow v. Preco, Inc.*, 132 Idaho 23, 966 P.2d 23 (1998), this Court held that an employee who brought a wage claim action against an employer was not entitled to attorney fees under I.C. § 12–120. *Id.* at 32, 966 P.2d at 32. The Court noted "that I.C. §§ 45–615 and 45–617 are the exclusive code sections under which an employee can recover attorney fees when the employee brings a claim for wages and treble damages." *Id.* at 33, 966 P.2d at 33,.

In the present case, neither party has claimed attorney fees under the correct section of the Idaho Code. Therefore, no attorney fees are awarded on appeal.

### III.

### CONCLUSION

The district court's award of treble damages to the Polks is affirmed because Family Home Center failed to tender wages that were due and owing within 48 hours of the Polks' written demand for wages. Additionally, we affirm the district court's determination that the Polks were the prevailing parties. We likewise hold that the district court did not abuse its discretion in barring the Polks' punitive damages expert from testifying. Finally, we hold that the district court did not abuse its discretion in directing a verdict against the Polks on their claim for punitive damages. No attorney fees are awarded on appeal, costs to respondents.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.