*89 P.3d 848*

**SE/Z CONSTRUCTION, L.L.C., an Idaho limited liability company, and Steven W. Zambarano, individually and on behalf of all other taxpayers of the State of Idaho, Plaintiffs–Appellants,**

v.

**IDAHO STATE UNIVERSITY, a body politic and corporate, The State of Idaho, Department of Administration, acting by and through the Division of Public Works, Defendants–Respondents,**

and

**Harris Brothers Construction Co., Inc., an Idaho corporation, Intervenor–Respondent.**

**No. 28649.**

Supreme Court of Idaho, Boise, March 2004 Term.

April 12, 2004.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellants. Dale W. Storer argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent, State of Idaho. Brian B. Benjamin argued.

Merrill & Merrill, Pocatello, for respondent, Idaho State University. Dave R. Gallafent argued.

Lowell N. Hawkes, Pocatello, for respondent, Harris Brother's Construction Company, Inc.

## OPINION ON REHEARING

KIDWELL, Justice.

Idaho State University (ISU) and the Department of Public Works (DPW) (collectively referred to as "the State") solicited bids for renovation of the Physical Science Building at ISU. SE/Z Construction, L.L.C. (SE/Z) and Harris Brothers Construction, Inc. (Harris), among others, bid the project. The State determined that Harris was the low responsible bidder. SE/Z and its owner/member, Steven W. Zombarano (Zombarano) (referred to collectively as SE/Z unless otherwise indicated), disputed this determination and filed suit seeking to enjoin the State from awarding the contract to Harris and praying for damages. The district court determined that the State correctly found that Harris was the low responsible bidder. SE/Z timely filed an appeal and this Court affirmed the judgment of the district court. SE/Z subsequently filed a petition for re-

hearing. On rehearing, we affirm the judgment of the district court.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In January 2001, the State solicited bids for renovation of the Physical Science Building at ISU. The bid documents requested that each contractor submit a base bid, prices for five alternates, and individual "unit prices" for two "classroom package" audiovisual systems, referred to in the bidding documents as classroom packages Nos. 2 and 3. The bid documents stated that the State would determine the low bidder "on the basis of the sum of the Base Bid and Alternates accepted."

The State opened the bids on March 6, 2001. Harris' base bid, plus the five alternates, totaled $1,099,974. SE/Z's bid for the same items totaled $1,094,999, $4,975 less than Harris'. Harris' unit prices for classroom packages Nos. 2 and 3 were, respectively, $16,500 and $12,700. SE/Z's unit prices for classroom packages Nos. 2 and 3 were, respectively, $16,895 and $13,324. Harris' unit price for classroom package No. 2 was $395 less than SE/Z's and Harris' unit price on classroom package No. 3 was $534 less than SE/Z's.

The bidding documents discussed at least ten rooms in which classroom packages Nos. 2 and 3 might be installed, but the bidding documents did not specify in which, if any, of the rooms the State would actually elect to install the classroom packages.

After the bids were opened, but before determining which bidder was the low responsible bidder, the State considered how many of the classroom packages it could purchase. Based on the unit prices and budget considerations, ISU decided to purchase fourteen audio-visual equipment packages, two classroom packages No. 2 and twelve classroom packages No. 3. Additionally, the State decided that the project budget would allow purchase of all five bid alternates.

To determine which bidder was the low responsible bidder, the State totaled the bidders' base bids, the five bid alternates, and the price of the desired classroom packages. Based on this calculation, Harris' bid totaled $1,313,774 and SE/Z's bid totaled $1,317,726. The State determined that Harris was the low bidder.

On March 16, 2001, the State notified SE/Z of its determination that Harris was the low bidder. On March 19, 2001, SE/Z sent a letter to the State protesting the award of the contract to Harris. The letter alleged the State incorrectly considered the unit prices for the classroom packages when determining the low bid. SE/Z contended that only the base bid and five bid alternates could be considered in determining the low bidder.

On April 12, 2001, SE/Z filed a complaint alleging that the State incorrectly determined Harris to be the low responsible bidder. The complaint prayed that the court enjoin the State from awarding the contract to Harris or from initiating work on the project. The complaint also sought damages. On April 24, 2001, SE/Z filed an application for a preliminary injunction and temporary restraining order. On May 1, 2001, SE/Z filed an amended complaint, adding a claim for damages resulting from bid preparation, a taxpayer suit, and a claim pursuant to 42 U.S.C. § 1983. On May 15, 2001, the parties stipulated to the essential facts underlying the matter. The district court issued an order denying SE/Z's application for preliminary injunction on June 20, 2001.

On February 15, 2002, the parties stipulated to submitting the matter to the court for decision based upon "the documents admitted into evidence, the testimony presented at hearing on Plaintiffs' Application for Preliminary Injunction conducted on May 15, 2001, and the stipulation of the parties filed herein." The stipulation also waived the rights of the parties to present any further evidence. On May 30, 2002, the district court entered a judgment which stated that "the Court finds that the [state] acted reasonably and legally under the bidding statutes in awarding the contract to Harris Brothers, and no rights of the Plaintiffs were infringed by the process in which the bid proposals were evaluated...." SE/Z timely

appealed. On appeal, this Court affirmed the judgment of the district court. SE/Z timely filed a petition for rehearing.

## II.

## STANDARD OF REVIEW

 This Court freely reviews matters of law. *Martel v. Bulotti,* 138 Idaho 451, 453, 65 P.3d 192, 194 (2003) (citing *Polk v. Larrabee,* 135 Idaho 303, 308, 17 P.3d 247, 252 (2000)). Interpreting contracts, determining a statute's meaning, and applying law to undisputed facts all constitute matters of law. *See Id.* This Court also exercises free review over constitutional issues. *Hamilton ex rel. Hamilton v. Reeder Flying Serv.,* 135 Idaho 568, 569, 21 P.3d 890, 893 (2001) (citing *Struhs v. Prot. Tech.'s, Inc.,* 133 Idaho 715, 722, 992 P.2d 164, 171 (1999)).

## III.

## ANALYSIS

### A. The State Properly Determined That Harris Was The Low Responsible Bidder Based On The Terms Of The Bidding Documents.

 Bid documents should be read and construed using common principles of contract interpretation. *Parks v. City of Pocatello,* 91 Idaho 241, 244, 419 P.2d 683, 686 (1966) (citations omitted). When reading contract documents, this Court's primary goal is to ascertain the intent of the parties. *Boel v. Stewart Title Guar. Co.,* 137 Idaho 9, 13, 43 P.3d 768, 772 (2002) (citations omitted). If possible, this Court should ascertain the intent of the parties from the words of the document at issue. *Id.* Where the parties' intent cannot be understood from the language employed in the writing, intent becomes a question of fact to be determined in light of extrinsic evidence. *Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002).

A thorough reading of the bid documents as a whole shows that the State intended that the determination of the low responsible bidder would account for the unit prices for the total number of classroom packages that ISU determined it could purchase post-bidding. The bid proposal states that the prices proposed were "to cover all expenses incurred in performing the work under the Contract Documents, of which this proposal is a part." The bid documents stated that some classroom packages were "included in the base bid in designated locations, however [the State] wishes to obtain unit prices in order to add them to classrooms indicated in § 16772, Paragraph 2.2.0 should funds be available." The bid documents as a whole show that the State wanted to purchase a number of classroom packages concurrent with the other products and services sought in the base bid and alternates.

Although contradicted by testimony of Harris Construction Inc.'s owner, SE/Z argues that a variety of contract terms show that the State did not intend to consider the price of purchasing classroom packages when determining the low responsible bidder. SE/Z notes that the bidding documents define "unit price" and "alternates" separately. Then, the bid documents state that "[t]he [State] shall have the right to accept Alternates in any order or combination . . ., and to determine the low bidder on the basis of the sum of the base bid and alternates accepted." SE/Z argues that the unambiguous language of the contract showed that the State only intended to consider the base bid and alternates when determining the low bidder. This argument is appealing when specific clauses are removed from the context of the bid documents as a whole. However, to accept the reading of the bid documents SE/Z now urges—the State could not consider the classroom packages in determining the low bidder—one must accept that the State did not necessarily intend the low responsible bidder to be the bidder who could provide, at the lowest cost, the services and materials sought in the bid documents. Such a conclusion is unreasonable and shows that the reading of the bid documents urged by SE/Z is also unreasonable. Therefore, based on the bidding documents, the State correctly determined Harris was the low bidder.

### B. The Plans And Specifications In The Bidding Documents Do Not Violate I.C. §§ 67–2309 and 67–5711C.

 Where statutes are unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no

occasion for a court to construe the language. *Friends of Farm to Mkt. v. Valley County*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002). The language of a statute, however clear, need not be read in a vacuum. *See Id.* (citations omitted).

### 1. The State's bid documents did not violate I.C. § 67–2309.

 Section 67–2309 governs "written plans and specifications for work to be made by officials." It states:

All officers of the state of Idaho, the separate counties, cities, towns, villages or school districts within the state of Idaho, all boards or trustees thereof or other persons required by the statutes of the state of Idaho to advertise for bids on contracts for the construction, repair or improvement of public works, public buildings, public places or other work, shall make written plans and specifications of such work to be performed or materials furnished, and such plans and specifications shall be available for all interested and prospective bidders therefor, providing that such bidders may be required to make a reasonable deposit upon obtaining a copy of such plans and specifications; all plans and specifications for said contracts or materials shall state, among other things pertinent to the work to be performed or materials furnished, the number, size, kind and quality of materials and service required for such contract, and such plans and specifications shall not specify or provide the use of any articles of a specific brand or mark, or any patented apparatus or appliances when other materials are available for such purpose and when such requirements would prevent competitive bidding on the part of dealers or contractors in other articles or materials of equivalent value, utility or merit. The design-build method of construction may be employed by public officials in contracts for the construction, repair, or improvement of public works, public buildings, public places or other work. For purposes of this section, a design-build contract is a contract between a public entity and a nongovernmental party in which the nongovernmental party contracting with the public entity agrees to both design and build a structure, roadway or other item specified in the contract. In any action which shall arise under this section, the court may assess a civil penalty not to exceed five hundred dollars ($500) to be paid by the public entity.

I.C. § 67–2309. The purpose of such competitive bidding statutes is to "safeguard public funds and prevent favoritism, fraud and extravagance in their expenditure." *Beco Const. Co., Inc. v. City of Idaho Falls*, 124 Idaho 859, 861–62, 865 P.2d 950–52 (1993) (quoting *Seysler*, 29 Idaho at 416–17, 160 P. at 263).

 This Court has not had the opportunity to determine the meaning of, or apply, I.C. § 67–2309. Read in context, the plain language of I.C. § 67–2309 requiring bid documents to state the "number, size, kind and quality of materials and service required for such contract," simply requires the State to identify the "number, size, kind and quality" sufficiently to facilitate the competitive bidding process. As the appellants put it, the bid documents "must contain sufficient information to enable prospective bidders to conform to the terms of the bid." A finding that the State must know the exact quantity of each unit or alternative for which it seeks bids, as the appellant argues I.C. § 67–2309 should be read, would make invitations for bids virtually inflexible and impede, rather than facilitate, the competitive bidding process. Clearly, that is not the intent of I.C. § 67–2309.

In this matter, the bid documents clearly stated "number, size, kind and quality" of materials necessary for each classroom package. The quantity of unit price classroom packages Nos. 2 and 3 which the bidding documents indicated the State might purchase was between zero and fourteen. Also, the undisputed facts do not in any way suggest that this flexibility in the bid documents, designed to enable the State to budget appropriately for the project, made the bidding process less competitive. Therefore, we find that the State's bidding documents comply with I.C. § 67–2309.

### 2. The State's bid documents do not violate I.C. § 67–5711C(2).

 This Court has not yet determined the meaning of, or applied, section 67–

**14**

5711C(2), which states that an invitation to bid "shall include a project description and all contractual terms and conditions applicable to the public works." An invitation to bid cannot, however, include all terms of the contract that will result from the bidding process. At the least, the price and choice of which bid alternates will be accepted will always be absent. The reference to "all contractual terms and conditions" unambiguously refers to the general terms of the contract document—in this case, AIA Document A201–1997, General Conditions Of The Contract For Construction. Just as omission of the price term would not be an omission of a term or condition for purposes of I.C. § 67–5711C(2), the lack of specificity regarding how many classroom packages the State would choose to buy should not be considered an omission of a term or condition within the meaning of the statute. Therefore, we find that the State did not violate I.C. § 67–5711C(2).

### C. The State Did Not Violate SE/Z's Right To Due Process.

 This Court discussed Due Process claims in the competitive bidding context at length in *Scott v. Buhl Joint School District No. 412*, 123 Idaho 779, 852 P.2d 1376 (1993). In *Scott*, this Court found that the lowest responsible bidder has a property interest in the contract issued as the result of a competitive bidding statute. *Id.* at 785, 852 P.2d at 1382. A party that is not the low responsible bidder does not have a property interest sufficient to support a due process claim. *Id.* It is undisputed that both Harris and SE/Z were responsible bidders and we have found that the State properly determined that Harris was the low bidder. Therefore, we hold that SE/Z lacks a protected property interest sufficient to sustain its constitutional claim.

### D. Appellants' Brief Contains A Conclusion Stating The Precise Relief Sought In Compliance With I.A.R. 35(a)(7).

 Idaho Appellate Rule 35(a)(7) requires that an appellant's brief contain "[a]

short conclusion stating the precise relief sought." I.A.R. 35(a)(7). Harris asserts that SE/Z' brief fails to state what relief SE/Z seeks. In its conclusion, the appellants' brief states: "the Court's original opinion should be withdrawn, and the State and ISU should be required to follow their own clear and unambiguous bid documents. The matter should be remanded to the trial court for determination of an appropriate remedy to which SE/Z is entitled under the circumstances." In the context of this appeal, this is a sufficient statement of the relief appellant seeks for purposes of I.A.R. 35(a)(7).

### E. None Of The Parties Are Entitled To Attorney Fees On Appeal.

#### 1. SE/Z is not entitled to attorney fees on appeal.

Pursuant to I.R.C.P. 54(e)(1), a party must prevail to justify an award of attorney fees. Therefore, we deny SE/Z's request for attorney fees.

#### 2. The Respondents are not entitled to attorney fees on appeal.

 The Respondents have prevailed in this matter; therefore, levying attorney fees against SE/Z would be appropriate if SE/Z acted without a "reasonable basis in fact or law" pursuant to I.C. § 12–117 or "frivolously, unreasonably, or without foundation" for purposes of I.C. § 12–121. *Northwest Bec-Corp v. Home Living Serv.*, 136 Idaho 835, 842, 41 P.3d 263, 270 (2002) (citing *Kelly v. Silverwood Estates*, 127 Idaho 624, 630, 903 P.2d 1321, 1327 (1995)). The facts underlying this appeal are undisputed. The facts, however, gave rise to questions of first impression regarding application of Idaho's competitive bidding law. Therefore, the challenge SE/Z brought was reasonably founded in fact and law and was not brought frivolously, unreasonably or without foundation and we deny the respondents' requests for attorney fees. Furthermore, regarding the State's request for attorney fees, we note that the issues on appeal arose largely be-

cause the State used poorly drafted, though unambiguous bidding documents, thus inviting this litigation.

### F. Harris Is Not Entitled To Attorney Fees On Rehearing.

On rehearing, Harris asserts it should be awarded attorney fees. A party claiming attorney fees must state the specific statute, rule, or case authority for its claim. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 90, 996 P.2d 303, 309 (2000). Harris cites no statute, rule, or case authority for its assertion that attorney fees should be awarded. Therefore, Harris is not entitled to attorney fees on rehearing before this Court.

### IV.

### CONCLUSION

The judgment of the district court is affirmed. The bid documents as a whole show that the determination of which bidder constituted the low responsible bidder would take into account the total price of the number of classroom units Nos. 2 and 3 that the State determined it could purchase. The bid documents violated neither I.C. §§ 67–2309 nor 67–5711C. SE/Z cannot maintain its constitutional claim because it lacks a protected property interest. SE/Z' brief contains a sufficient statement of the relief appellants seek for purposes of I.A.R. 35(a)(7). No attorney fees are awarded on appeal. Harris is not entitled to attorney fees on rehearing because they failed to cite to a statute, rule, or case authority in support of its attorney fees argument. Costs are awarded to the Respondents.

Justices SCHROEDER, EISMANN and BURDICK concur.

Chief Justice TROUT, Dissenting:

Because I believe the bid documents for the ISU physical science building renovation are not ambiguous and clearly set forth the method by which ISU and the Department of Public Works would select the lowest responsible bidder, I must respectfully dissent from the Court's opinion.

Section 5.3.2 of the bid documents reads as follows:

The Owner shall have the right to accept Alternates in any order or combination, unless otherwise specifically provided in the Bidding Documents, and to determine the low Bidder on the basis of the sum of the Base Bid and Alternates accepted.

Under section 16772 of the bid documents related to "Audio/visual system", Part 2.1, B provides as follows:

The following Classroom Packages are included in the Base Bid in designated locations (see paragraph 2.2 below). However, the owner wishes to obtain unit prices for packages # 2 and # 3 in order to add them to classrooms indicated in Paragraph 2.2D below, should funds be available.

In other words, Classroom Packages 2 and 3 were competitively bid when SE/Z and Harris calculated their Base Bid. ISU simply wanted unit prices broken out of the Base Bid, so that if money were available, additional classroom packages could be purchased. The bid documents are very clear in indicating that the decision regarding the low bidder would be made based only upon the total of: (1) the Base Bid (including classroom packages 2 and 3 for certain designated classrooms), and (2) the total bid price for whichever Alternates (things like cleaning exterior brick, mobile storage system, and metal shelving) ISU chose to accept. When the bids were opened and the Base Bid and Alternates were calculated, SE/Z was narrowly the lower bidder. Thus, under the clear terms of the bidding documents, SE/Z should have been awarded the contract. To allow ISU to add to the bid amounts by picking certain additional classroom packages, has allowed ISU to control the party to whom the contract is awarded, in direct contravention of provision 5.3.2 of the bid documents. Therefore, I think the district court's opinion should be reversed and the case remanded to determine what appropriate remedies SE/Z is entitled to, now that the construction is completed.